[651 NYS2d 418]

MARK HUGHES, as Guardian of MATTHEW BLACK and as Executor of BETTINA BLACK, Deceased, Respondent, v LENOX HILL HOSPITAL, Appellant.

First Department, December 3, 1996

**APPEARANCES OF COUNSEL**

*Edmund F. Wolk* of counsel, New York City *(Michael B. Wolk* on the brief, attorneys), for appellant.

*Leon I. Behar* of counsel, New York City *(Leon I. Behar & Associates, P. C.,* attorneys), for respondent.

**OPINION OF THE COURT**

RUBIN, J.

This case involves the right of a minor child to succeed to tenancy of a three-bedroom, rent-stabilized apartment following the death of the tenant of record. What makes the assertion of this right remarkable in this instance is that neither the minor nor, apparently, anyone else has resided at the subject premises for the last seven years.

Fundamentally at issue on this appeal is the degree of oversight to be exercised by the courts when confronted with a claim by a family member to succeed to the rent-stabilized lease of the tenant of record, who has permanently departed from the premises. The right of succession is exclusively

derived from the Rent Stabilization Code (9 NYCRR parts 2520-2530), which was amended, effective November 1989, to provide that a family member could succeed to the tenancy of a rent-stabilized apartment (*see, Festa v Leshen,* 145 AD2d 49, 54-55; *467—42nd St. v Suarez,* 162 Misc 2d 129, 130). Prior to that time, the Rent Stabilization Law of 1969 (Administrative Code of City of NY, tit 26, ch 4) granted no such right (*Sullivan v Brevard Assocs.,* 66 NY2d 489, 493-494). Resolution of this dispute therefore requires that the Court consider the breadth of the right of succession conferred by the regulatory provision as well as the consequence of various alleged defects in notice, urged by plaintiff to be fatal to any challenge to succession.

The assertion of the right to recover possession of residential premises by or through an infant who succeeds to the tenancy of a departed relative has been encountered tangentially by this Court in prior cases, most recently in *Cox v J.D. Realty Assocs.* (217 AD2d 179) and previously in *Quiala v Laufer* (180 AD2d 31). Anomalies arise from the inherent tension between the literal terms of the regulation under which succession is claimed, the Rent Stabilization Law from which the authority to promulgate regulations is derived (*see,* Administrative Code of City of NY § 26-511 [b]) and case law. The regulation does not take into account succession by an infant whose parent or guardian resides elsewhere but decrees, seemingly absolutely, that the child "shall be entitled to be named as a tenant on the renewal lease" (Rent Stabilization Code [9 NYCRR] 2523.5 [b] [1]). However, as reflected in Rent Stabilization Code (9 NYCRR) § 2520.11 (k), the protection afforded by the rent regulations is expressly limited by the governing statutes, which are universal in exempting from their ambit dwelling units "not occupied by the tenant, not including subtenants or occupants, as his primary residence" (Administrative Code of City of NY § 26-504 [a] [1] [f] [Rent Stabilization Law]; *see also,* McKinney's Uncons Laws of NY § 8605 [Local Emergency Housing Rent Control Act § 5; L 1962, ch 21, § 1, as amended]; New York City Rent and Rehabilitation Law [Administrative Code] § 26-403 [e] [2] [i] [10]; *Friesch-Groningsche Hypotheekbank Realty Credit Corp. v Slabakis,* 215 AD2d 154, 155). On a public policy level, this Court has "voiced disapproval of the misuse of rent-regulated space and noted the contribution of underutilization of regulated housing to the general shortage of residential accommodations" (*Cox v J.D. Realty Assocs., supra,* at 185, and cases cited therein). It has been observed that " 'regulatory protection should not be available where the

tenant's claim to the subject premises is based on less than the need for a place to call home. * * * Public policy is not advanced by permitting housing units to be held, partly or wholly unutilized, by tenants whose interest is pecuniary gain rather than affordable housing' " (*Briar Hill Apts. Co. v Teperman*, 165 AD2d 519, 523, quoting *Park S. Assocs. v Mason*, 123 Misc 2d 750, 753, *affd* 126 Misc 2d 945). The successful assertion of a possessory right on behalf of an infant who has now resided out of State for the last seven years is an aberration that requires remediation.

The facts of this case are essentially undisputed. The named tenant, Bettina Black, entered into a two-year, rent-stabilized lease with defendant Lenox Hill Hospital for apartment 9B, located at 122 East 76th Street in Manhattan, at a monthly rental of $558.19. Her tenancy commenced on December 1, 1985 and expired, according to the lease, on November 30, 1987. Also living in the subject premises was her son, Matthew, who was 10 years old at that time the lease commenced. On December 5, 1987, Bettina Black renewed the lease for another two years.

On October 26, 1989, at which time Matthew was 14 years old, Bettina Black died. Immediately thereafter, her brother, Mark Hughes, and his wife and son, who maintain their permanent residence in Marietta, Georgia, temporarily moved into the apartment with Matthew. On or about November 9, 1989, Mark Hughes removed the furniture and other personal effects from the apartment, returning to his home in Georgia with his family and his nephew. Matthew, a high school freshman, was enrolled at Wheeler High School in Marietta. After completing his sophomore year, he transferred to a boarding school in Connecticut to complete his high school education. During summer vacations, Matthew returned to the Hughes home in Marietta.

In the meantime, on or about November 27, 1989, shortly after the apartment was vacated, defendant sent the attorneys for the Estate of Bettina Black a "Notice to Terminate Non-Renewal and Thirty (30) Day Notice to Tenant" (Termination Notice), which states that Mrs. Black's lease will terminate on March 31, 1990. The notice, which is also addressed to Matthew, indicates that, pursuant to the Rent Stabilization Code (9 NYCRR 2524.2 [c] [2]), defendant has elected not to renew the lease since Bettina Black, deceased, does not occupy the premises as her primary residence and since, upon information and belief, Matthew Black, who formerly resided at the

premises, has vacated the apartment and no longer occupies it. Included in the Termination Notice is a 30-day notice that defendant intends to commence an action seeking to recover possession of the apartment on that basis. Such notice is required to be given pursuant to the Rent Stabilization Code (9 NYCRR 2524.4 [c]), which provides that no action to evict a tenant from a housing accommodation will lie unless the owner gives the tenant at least 30 days' written notice of the intention to commence an action on the ground that the premises are not used as a primary residence (Administrative Code of City of NY [Rent Stabilization Law] § 26-504 [a] [1] [f]; see also, Real Property Law § 232-a). There is no indication in the record that Matthew was personally served with the Termination Notice, although, at trial, his guardian conceded, "I was certainly informed of it."

On or about March 30, 1990, Mark Hughes, as guardian of Matthew and executor of Bettina Black's estate, commenced this action seeking, inter alia, (1) a declaration that the apartment is Matthew's primary residence and that Matthew is therefore entitled to a rent-stabilized lease in his own name, (2) a permanent injunction directing defendant to issue a renewal lease to Matthew, (3) a declaration that the Termination Notice is insufficient and defective, and (4) attorneys' fees and expenses incurred in prosecuting the action.

Defendant interposed an answer in or about April 1990, generally denying the allegations. It asserts the affirmative defense that Matthew is not a primary resident of the apartment nor has he been for some time and, as a first counterclaim, seeks a declaration that it is entitled to possession of the subject premises. In its second counterclaim, defendant seeks rent from December 1, 1989 to March 31, 1990 at the rate contained in the rent-stabilized lease and use and occupancy at the fair market value for the period commencing April 1, 1990.

The one factual dispute arises from confusion regarding the term of the renewal lease in effect at the time of Mrs. Black's death. Defendant landlord correctly construes the renewal agreement she executed on December 5, 1987 as extending the lease term until March 31, 1990. The renewal agreement states that "your new rent will commence 4/1/88" while reciting that the tenant's present "lease will expire 11/30/87." Contrary to Supreme Court's misapprehension, the end of the original lease term is not dispositive of the commencement of the renewal period. Where the landlord gives late notice of its offer to renew or otherwise delays in furnishing the tenant with the

renewal agreement, the effective date of the renewal lease is extended (*Matter of Sommer v New York City Conciliation & Appeals Bd.*, 116 AD2d 457, 459). Here, the notice of lease renewal is dated December 1, 1987 and must, by regulation and case law (9 NYCRR 2524.2 [c] [2]; *Crow v 83rd St. Assocs.*, 68 NY2d 796; *Golub v Frank*, 65 NY2d 900), give the tenant at least 120 days' notice. Therefore, the renewal lease term cannot begin prior to April 1988, and defendant is correct in its assertion that its term extends from April 1, 1988 to March 31, 1990.

In May 1990, at a pretrial deposition, Matthew initially stated that his uncle's home in Georgia was a temporary address, indicating that he was not going to remain there and might move to another location, such as New York. However, he also testified that when people ask him where he lives, he gives the Georgia address, without qualifying it as a temporary residence. In addition, he stated that, in the period of time after he left the apartment, he has returned there for just one day and has not slept there.

Plaintiff then moved for a preliminary injunction pending a determination on the merits. By decision and order entered August 8, 1990, Supreme Court, New York County (Carmen B. Ciparick, J.), granted a *Yellowstone* injunction and issued a stay, tolling the running of time contained in the Termination Notice, and directed that plaintiff continue to pay rent under the terms of the expired lease, without prejudice.

On January 24, 1994, a nonjury trial was conducted. Only Mark Hughes and Matthew Black testified. At that time, Matthew was enrolled as a freshman at Furman University in Greenville, South Carolina. In response to the court's inquiry with respect to whether he wanted to retain the apartment, Matthew said that he "want[ed] to have the right to have the apartment, because New York has so many opportunities, and if I had the apartment, it would open new doors, possibly, depending upon what I choose as a major job, or what field I'd like to go into." The parties stipulated that rent has been paid at the rate specified in the lease pursuant to the terms of the stay imposed by Supreme Court in August 1990.

After trial, Supreme Court found that Matthew had resided with his mother as a full-time student from the inception of the lease until her death and reasoned that, as a full-time student during her occupancy, he was entitled to either a renewal lease or notice of intention not to renew after her death. The court held that the Termination Notice was not served

within the period of from 150 to 120 days before the expiration of the lease (based on the erroneous assumption that the lease expired on November 30, 1989) and that notice was not properly served upon Matthew. The court ruled that the notice is deficient because it contains only conclusory allegations that fail to allege a factual basis sufficient to support the ground for termination. The court concluded, "Matthew was a primary resident in the Apartment on the date his mother died; he had been such a resident for the requisite period of time entitling him to the notice which he never received." It declared the Termination Notice to be without force and, therefore, insufficient to terminate the tenancy. The court noted that the parties had entered into a stipulation, agreeing to sever the fourth cause of action seeking attorneys' fees and, in the event of disagreement, to pursue the subject in a plenary action. Therefore, in an order and judgment (one paper) entered April 3, 1995, the court directed defendant to issue a rent-stabilized renewal lease for the apartment in Matthew's name and severed the fourth cause of action seeking attorneys' fees.

The pertinent provision on which the right to succeed to the tenancy of the subject premises is predicated is found in the Rent Stabilization Code (9 NYCRR) § 2523.5 (b) (1). It states that if a renewal offer is made to the named tenant pursuant to 9 NYCRR 2523.5 (a) "and such tenant has permanently vacated the housing accommodation, any member of such tenant's family, as defined in section 2520.6 (o) of this Title, who has resided with the tenant in the housing accommodation as a primary residence for a period of no less than two years * * * immediately prior to the permanent vacating of the housing accommodation by the tenant, or from the inception of the tenancy or commencement of the relationship, if for less than such periods, shall be entitled to be named as a tenant on the renewal lease." Rent Stabilization Code (9 NYCRR) § 2520.6 (o) includes a son as a family member, observing no distinction between an adult child and an infant and making no provision for service of the requisite notice on a guardian or upon the estate of the decedent in the event of minority.

Plaintiff's position that his ward is entitled to possession of the premises is predicated on two grounds. First, he relies on Rent Stabilization Code (9 NYCRR) § 2523.5 (b) (2) (ii), which provides: "The minimum periods of required residency set forth in this subdivision shall not be deemed to be interrupted by any period during which the 'family member' temporarily relocates because he or she * * * (ii) is enrolled as a full-time

student." He argues that, because Matthew was attending school during the several years after his mother died and during which the premises remained vacant, the apartment constituted his actual residence.

Plaintiff's argument is without merit for two reasons. First, the phrase "[t]he minimum periods of required residency" refers to the interval prior to the permanent removal from the premises of the tenant named in the lease and not, as plaintiff presumes, to the family member's succeeding tenancy. In *Cox v J.D. Realty Assocs.* (*supra*, at 182), this Court noted that the pertinent period in determining the residency of two children in the subject apartment was "the two years immediately prior to the date their parents permanently vacated the premises." The evidence submitted by the would-be successors in that case was found (*supra*, at 184) to be "insufficient to establish the 'ongoing, substantial, physical nexus with the controlled premises for actual living purposes—which can be demonstrated by objective, empirical evidence'" (quoting *Emay Props. Corp. v Norton*, 136 Misc 2d 127, 129 [App Term, 1st Dept]). In the instant matter, there is no dispute that Matthew is a family member, who has fulfilled the residency requirement and so is "entitled" to succeed to the tenancy. At issue is the sufficiency of his connection to the subject premises so as to support his claim of succession.

Second, plaintiff's assertion of the right to be the named lessee as successor to his mother's tenancy is inconsistent with *Quiala v Laufer* (*supra*, at 37), in which this Court (Ross, J.) noted that succession was claimed by infant family members "whose primary residence is tied to the individual adult under whose parental authority and control they are raised". The Court applied the "established presumption that the residence of the child is the residence of the parents" (*supra*, at 34) and emphasized (*supra*, at 35) that "the presumption concerning the residence of the child is not easily rebutted, and should not be lightly cast aside" (*see, Catlin v Sobol*, 77 NY2d 552, 559). The criterion regarded as controlling in *Quiala v Laufer* (*supra*) is the residence of the infant at the time the succession right is asserted. In the matter on appeal, it is material that Matthew resided with his guardian, in Georgia, at the time his mother's lease expired and this action was commenced. It is also highly significant that Matthew has continued to reside with his uncle during the ensuing period, up to the time of trial and, apparently, to present. Plaintiff's argument that time spent living at an academic institution should not be deemed to interrupt a

child's actual residence is pertinent, however, to the extent that Matthew's attendance at boarding school does not serve to rebut the established presumption that the child's residence is that of his parent or guardian (*Quiala v Laufer, supra,* at 34).

Plaintiff's remaining argument is purely procedural and seems calculated to obviate judicial review of the bona fides of his ward's claim to the tenancy of his mother. It rests on certain assumptions concerning the process of succession that are not supported by the terms of the succession provision or the various notice provisions on which plaintiff relies. In essence, he argues that the lease under which Bettina Black occupied the premises was never terminated because the required notice was not served on the proper party (Matthew); the notice does not contain a statement of the facts necessary to establish the grounds on which termination is sought pursuant to the Rent Stabilization Code (9 NYCRR 2524.2 [b]); and notice was not served within the time prescribed by Rent Stabilization Code (9 NYCRR) § 2524.2 (c) (2) for termination based upon nonprimary residence, that is, 150 to 120 days prior to the expiration of the lease term.

As an initial observation, notice requirements are largely obviated by the procedural posture of this case. Normally, to commence a summary proceeding the landlord must serve the requisite 30-day notices of its election to terminate the tenancy (Administrative Code of City of NY [Rent Stabilization Law] § 26-504 [a] [1] [f]) and to institute legal proceedings on the basis of nonprimary residence (Rent Stabilization Code [9 NYCRR] § 2524.4 [c]). The landlord is not relieved of compliance with the 30-day notice provisions merely because possession is sought by way of declaratory judgment rather than summary proceeding (*Park House Partners v DeIrazabal,* 140 AD2d 84, 88, *lv dismissed* 73 NY2d 866). Defendant landlord in this case, however, has pursued neither judicial remedy; rather, it is plaintiff who commenced this action for a judgment declaring his rights to the tenancy. Therefore, defects in notices of intent that might have been raised by way of defense in a suit brought by the landlord are inapposite under the circumstances of this case. Having sought judgment declaring "the rights and other legal relations of the parties to a justiciable controversy" (CPLR 3001), plaintiff cannot contest the Court's power to decide all aspects of the dispute and to accord relief to the deserving party. It should also be noted that plaintiff is amenable to suit (in his capacity of executor and guardian) for any cause of action asserted by way of counterclaim (CPLR 3019 [a], [c], [d]).

The notice provision relied upon by plaintiff, however, contains distinctive language. It is unique in that, in addition to the usual bar against commencement of a proceeding, it also prohibits a tenant's being "removed or evicted from a housing accommodation by court process" (Rent Stabilization Code [9 NYCRR] § 2524.2 [a]) in the absence of the specified notice. It therefore remains to be decided whether this 150-to-120-day notice provision is applicable under the facts of this case.

█ As a further observation on the subject of procedure, it should be emphasized that, normally, a question of the right to possession of leased premises is to be decided in a summary proceeding in Civil Court. The summary proceeding, while not without attendant delay, is far more expeditious and generally would not be expected to take nearly four years to come to trial, as in this case. The nature of this dispute is, however, extraordinary as it presents a novel issue, implicating considerations of public policy, statutory intent and regulatory construction. Therefore, it constitutes an exceptional case, appropriate for resolution in Supreme Court by way of an action for declaratory judgment (*Cox v J.D. Realty Assocs.*, *supra*, at 181-183).

█ As to the substance of the parties' dispute, plaintiff's particular interpretation of the succession provision warrants analysis. It rests upon the inherent assumption that, (1) upon the death of plaintiff's decedent, Matthew became the named tenant under the lease and on the further assumption that (2) any proceeding to terminate the tenancy must be based on the ground that Matthew does not use the apartment as his primary residence. Thus, plaintiff is led to the conclusion that (3) the landlord is required to serve Matthew and the estate with the prescribed notice of termination.

Because a family member not named on the lease has only such right to the tenancy as conferred by the succession provision of the Rent Stabilization Code, closer examination of the language of that provision is appropriate. Insofar as pertinent, Rent Stabilization Code (9 NYCRR) § 2523.5 (b) (1) provides that "if an offer is made to the tenant [to renew the lease] and such tenant has permanently vacated the housing accommodation, any member of such tenant's family * * * shall be entitled to be named as a tenant on the renewal lease." This language suggests that, in the ordinary course of events, a family member, who remains in the apartment following the departure of the named tenant, will receive a renewal notice towards the end of the lease term, directed to the named ten-

ant; the recipient will thereupon inform the landlord of the tenant's departure as well as his status as a family member; and, assuming there is no dispute regarding his status, the surviving family member will receive a renewal lease designating him tenant of record. The facts of this case represent a substantial departure from the ordinary course in that, at the time the renewal offer was scheduled to be made by the landlord (November 1989), the remaining family member had already removed from the premises and taken up residence in Georgia with his guardian. Under these circumstances, there is a question whether the landlord is under any obligation to offer a renewal lease. But even assuming, for the sake of argument, that a renewal offer is mandated, there is no basis to conclude that the law requires the landlord to name an absentee tenant as the designated lessee of a rent-stabilized apartment.

The first assumption implicit in plaintiff's position on this appeal is that operation of Rent Stabilization Code (9 NYCRR) § 2523.5 (b) (1) is automatic upon the death of the named tenant. Under the facts of this case, the result would be the issuance of a renewal lease to a 14 year old who has taken up permanent residence in the State of Georgia; who has no need to retain possession of the apartment because he resides with his guardian; and who made no use of the premises for a period of four years (at the time of trial) following the death of the tenant of record. While this result is sufficiently objectionable on public policy grounds—resulting in the non-use of a very affordable, three-bedroom apartment for an unconscionable period of time—it also conflicts with the substantive terms of the succession provision.

Under the regulation, a family member is "entitled to be named as a tenant on the renewal lease" only "if an offer is made to the tenant" to renew the lease *(ibid.)*. Had the intent been to immediately install the family member as tenant of record, the regulation would doubtless provide for transfer of the leasehold upon the named tenant's permanent removal from the premises. It would have been a simple matter to have worded the provision to recite that the family member "shall" be named as the tenant on the renewal lease and not merely that he "shall be entitled to be named" as such *(ibid.)*. In any event, the language of the regulation will not preclude judicial review of its conformance either with governing statutory and case law or with public policy.

Determination of this matter requires that the Court weigh competing policy concerns, assuring the efficient use of scarce

affordable housing accommodations while preserving the right of family members to remain in residential premises that they regard as home. As this Court noted in *Quiala v Laufer* (180 AD2d, *supra,* at 35), the succession provision "was included in the Code to prevent the harm that would ensue from the wholesale eviction of family members previously permitted under prior existing law as set forth in *Sullivan v Brevard Assocs.* (66 NY2d 489; *Lesser v Park 65 Realty Corp.,* 140 AD2d 169, 173, *lv dismissed* 72 NY2d 1042)." The merit to Rent Stabilization Code (9 NYCRR) § 2523.5 (b) is that it spares family members the disruption of relocation at a time of emotional and possibly financial turmoil. Indeed, the thread that runs through the cases construing the succession provision is the need for continuity in possession or, alternatively stated, "the need for a place to call home" (*Park S. Assocs. v Mason,* 123 Misc 2d, *supra,* at 753). For example, in *Quiala v Laufer* (*supra*), infants who resided with their grandmother, who had not assumed parental control, were denied succession rights to her Manhattan apartment following her death. The mother of the children resided in a house she owned in Brooklyn. While the holding is based upon the absence of the assumption of parental control by the grandmother, the Court remarked (*supra,* at 37), "This is not a situation where the family of the deceased tenant will be put out with no other housing option." By contrast, succession was permitted in the case of a 15 year old who had resided with his grandmother prior to her death even though the boy's mother "did not return until on or about the time the tenant became ill and was hospitalized" (*Doubledown Realty Corp. v Harris,* 128 Misc 2d 403 [App Term, 1st Dept]). Significantly, both *Quiala* and the instant matter involve claims to possession by surviving family members who reside somewhere other than the regulated housing accommodation and thus make no immediate use of the premises, whereas *Doubledown Realty Corp. v Harris* (*supra*) involves the claim of family members who presently reside in the subject apartment and whose interest in the tenancy is based upon their need for a home.

Although not expressly stated in the succession provision, implicit in the regulatory scheme—which notably ties the succession rights of a family member to the landlord's offer of a renewal lease to the occupant, who is (presumably) a primary resident—is that the dwelling unit will remain in continuous use as a primary residence. As the cases that have considered the issue illustrate, the absence or removal from the premises,

at the time an offer of a renewal lease is required to be made, of the person claiming succession rights gives rise to a presumption of abandonment of possession and waiver of the right of succession. This outcome is thoroughly consistent with public policy. If the merit to the succession provision is that it spares a family member the disruption of relocation at a time of potential emotional and financial stress, the merit to the requirement of continuous occupancy is that affordable residential accommodations, in scarce supply, will not go unutilized because, as here, the would-be successor has no immediate use for them (*Briar Hill Apts. Co. v Teperman*, 165 AD2d, *supra*, at 523-524). Indeed, plaintiff's assertion of a claim to possession of this apartment is predicated on nothing more than his ward's vague articulation of the possibility that he might settle in New York upon completing his studies.

On this record, plaintiff's contentions concerning inadequate notice pursuant to Rent Stabilization Code (9 NYCRR) § 2524.2 (c) (2) merely serve to elevate form over substance. The question is not whether Matthew maintains a primary residence elsewhere, although the record clearly indicates that he does. The operative question is whether Matthew abandoned the premises. As Supreme Court observed upon denying the parties' applications for further injunctive relief (order entered May 8, 1991, Carmen B. Ciparick, J.), "It appears from the papers before the court that Matthew has severed all ties to the apartment." The record that has developed over the course of the ensuing 5 1/2 years conclusively demonstrates that Matthew has relinquished possession of the apartment and so waived any claim he might have had to succeed to the tenancy of his mother.

Even if the alleged deficiencies in the Termination Notice were to be considered, this Court does not share plaintiff's interpretation of the succession provision, which would effectively place the right of succession beyond judicial review. As a factual matter, service of the notice of the landlord's intention not to renew the lease was timely, having been made during November 1989, within 150 and 120 days prior to expiration date of the renewal lease on March 31, 1990. There is no express regulatory requirement for service upon the remaining family member; the right of the estate in the lease is a matter of statute; and Matthew does not come within the regulatory definition of a "tenant", upon whom service must be made (*see, 170 W. 85th St. Tenants Assn. v Cruz*, 173 AD2d 338, 339-340).

Commencement of a proceeding to terminate a lease on the ground that a "housing accommodation is not occupied by the tenant, not including subtenants or occupants, as his or her primary residence" (Rent Stabilization Code § 2524.4 [c]) requires that notice be served upon the tenant (Administrative Code of City of NY [Rent Stabilization Law] § 26-504 [a] [1] [f]; Rent Stabilization Code [9 NYCRR] § 2524.2 [c]). As a matter of law, the only person in this case who comes within the regulatory definition of "tenant" (9 NYCRR 2520.6 [d]) is Bettina Black, who died on October 26, 1989. Her death occurred just before commencement of the notice period of from 150 to 120 days prior to the expiration of the lease term on March 31, 1990. At the time Matthew moved out of the apartment on November 9, 1989, he was only a potential tenant, "entitled" to be designated a named tenant on a "renewal lease" (9 NYCRR 2523.5 [b] [1]), which would not commence until April 1, 1990. Thus, the succession provision contains no express requirement for service of any renewal notice on the surviving family member, although it seems to contemplate that such notice will come to his attention.

To the extent that notice is a material issue in this or similar matters, this Court takes the position that the appropriate standard for assessment of the adequacy of notice is one of reasonableness in view of all attendant circumstances. At the time service of the renewal notice was required to be made (November 1989), the landlord learned that the tenant of record was deceased, became aware that the family member residing with her had removed from the premises and knew that plaintiff's decedent was represented by counsel, to whom it delivered notice. Plaintiff has conceded that the law firm actually represented the estate and that he was personally aware of the notice served by defendant. Giving due regard to these circumstances, service upon the attorney was entirely reasonable.

With respect to the contents of the notice, which merely recites the fact of the tenant's death and her son's removal from the apartment, plaintiff states his objection to the lack of "facts upon which the ensuing nonprimary residence proceeding will be based" (citing *First Sterling Corp. v Zurkowski*, 142 Misc 2d 978 [App Term, 1st Dept]). While there is some authority that might be read as supporting plaintiff's view (*see, Kaycee W. 113th St. Corp. v Diakoff*, 160 AD2d 573, 574 [notice purported to be predicated on both nonprimary residence and illegal subletting grounds]), this Court has recently noted that

facts concerning a tenant's residence and the use made of leased premises are peculiarly within the tenant's knowledge. Therefore, contrary to the general rule (CPLR 408; *Dubowsky v Goldsmith*, 202 App Div 818), the law recognizes a presumption in favor of discovery in summary proceedings commenced by the landlord on the basis of nonprimary residence (*Cox v J.D. Realty Assocs., supra*, at 183-184; *see also, McQueen v Grinker*, 158 AD2d 355, 359). Significantly, plaintiff does not suggest what else the notice should contain or what "facts" were within the landlord's knowledge but omitted from its notice. Again, with respect to the adequacy of notice, the appropriate test is one of reasonableness in view of the attendant circumstances. Plaintiff has stated no basis why the notice served by defendant should be regarded as unreasonable or, alternatively, should be subject to strict construction as a matter of equity (*see, e.g., MSG Pomp Corp. v Doe*, 185 AD2d 798 [landlord's misrepresentation of ownership and rent-regulated status of apartment]).

Plaintiff's argument with respect to the necessity to serve notice on the estate is obscure. He suggests that the service made upon the attorney who ultimately represented the estate of Bettina Black is inadequate to terminate the lease. At the same time, quoting this Court's decision in *Joint Props. Owners v Deri* (113 AD2d 691, 693 [Sullivan, J.]), he acknowledges that, upon the death of a tenant, "the leasehold interest passes as personal property to the estate (EPTL 13-1.1), which remains liable for the payment of rent" (*see, Remford Corp. v Rosenfeld*, 274 App Div 769; *Schnee v Jonas Equities*, 109 Misc 2d 221, 222 [App Term, 2d Dept]). What plaintiff omits from his brief is the Court's further pronouncement that, pursuant to Real Property Law § 236, "an executor has the right, until the expiration of the lease, to possession of the demised premises in his capacity as representative of the deceased tenant's estate" (*Joint Props. Owners v Deri, supra*, at 693-694). The assertion of the estate's limited right to the leasehold is entirely at the executor's initiative, and notice by the landlord is simply not relevant to its exercise.

Accordingly, the order and judgment (one paper) of Supreme Court, New York County (John W. Grow, J.), entered April 3, 1995, which, after nonjury trial, *inter alia*, declared that Matthew Black succeeded to the rent-stabilized tenancy of his deceased mother, Bettina Black, that defendant failed to provide a proper notice of termination of Bettina Black's lease to Matthew Black, and that the notice served by defendant

was defective, and which directed that defendant issue a rent-stabilized lease to Matthew Black for the apartment, should be reversed, without costs, to the extent appealed from, as limited by the briefs, and judgment entered declaring that defendant is entitled to possession of the subject premises as of April 1, 1990.

WALLACH, J. P., NARDELLI, WILLIAMS and ANDRIAS, JJ., concur.

Order and judgment (one paper) of Supreme Court, New York County, entered April 3, 1995, reversed, without costs, to the extent appealed from, as limited by the briefs, and judgment entered declaring that defendant is entitled to possession of the subject premises as of April 1, 1990.