(March 11, 1999)

■ SOUTH PARK ASSOCIATES, L. L. C., et al., Appellants, v ANDREA TOLEDANO, Respondent. [686 NYS2d 433] —Order, Supreme Court, New York County (Harold Tompkins, J.), entered April 29, 1997, which granted defendant-tenant's motion to dismiss the complaint, declared that the subject apartment was not destabilized, and directed plaintiff-owner to offer defendant a renewal lease, unanimously modified, on the law, the facts and in the exercise of discretion, (1) to vacate that portion of the order which dismissed the complaint, with leave to amend the complaint to seek a monetary recovery for unpaid rent (if any); (2) to grant defendant the right to continued status as a rent-stabilized tenant upon condition that she execute, within ten days of service of this order with notice of entry, the renewal lease form dated April 18, 1996, the term of which renewal lease, if executed, to commence on May 1, 1996, for a term of

two years, terminating on April 30, 1998, with rent for the first four months of the term to be fixed at $1,434.93 per month, and for the balance of the term to be fixed at $1,492.33 per month, with interest, less a credit to defendant for any sums paid; (3) to vacate the declaration that the subject apartment is not destabilized; and (4) to grant leave to plaintiffs to serve a new lease renewal notice extending the term beyond April 30, 1998, if so advised; and as so modified, affirmed, without costs.

Defendant is the rent-stabilized tenant of apartment 9/10B at 230 Central Park South in Manhattan. Plaintiffs are the owner-landlord of the building.

Plaintiffs sought a declaration that the apartment was no longer subject to stabilization protection, claiming that defendant's failure to execute and return the renewal lease offer form, dated April 18, 1996 (for a term commencing on May 1, 1996), mandated forfeiture of defendant's long-term stabilized tenancy. In dismissing the complaint, the IAS Court stated:

"The documentary evidence includes a copy of the lease renewal which was dated April 18, 1996 and which commenced on May 1, 1996. By its terms, this lease renewal was improper since it did not afford defendant the 120 window period [sic], see Rent Stabilization Code § 2523.5 (a), (c); *Golub v Frank*, 65 NY2d 900 (1985).

"Since the defendant-tenant was not served with a proper renewal lease, she has established as a matter of law her right to receive a proper renewal lease and plaintiff's complaint must be dismissed."

The IAS Court's order declared that the apartment was not destabilized, and that plaintiffs were "required to offer defendant a renewal lease." Although no interim stay of this order has been sought pending appeal, it appears that plaintiffs have not tendered a renewal offer.

On appeal, plaintiffs contend that defendant had no right or reason to treat the lease renewal form as a nullity, but should have exercised the option regarding the commencement date of the lease which is provided in Rent Stabilization Code (9 NYCRR) § 2523.5 (c). According to plaintiffs, the new increased rent would become effective no less than 120 days after such offer to renew is made by the owner, regardless of the chosen commencement date. Thus, in essence, the owner is arguing that the 120-day window period requirement set forth in section 2523.5 (a) does not apply where, as here, the owner failed to offer a timely renewal lease, and subdivision (c) controls. Section 2523.5 (c) provides as follows: "Where the owner fails

to timely offer a renewal lease or rental agreement in accordance with subdivision (a) of this section, the one or two year lease term selected by the tenant shall commence at the tenant's option, either (1) on the date a renewal lease would have commenced had a timely offer been made, or (2) on the first rent payment date occurring no less than 120 days after the date that the owner does offer the lease to the tenant. In either event, the effective date of the increased rent under the renewal lease shall commence on the first rent payment date occurring no less than 120 days after such offer is made by the owner, and the guidelines rate applicable shall be no greater than the rate in effect on the commencement date of the lease for which a timely offer should have been made."

Thus, according to the Rent Stabilization Code, it does not appear that untimely delivery of the lease renewal form (i.e., after the expiration of the lease) nullifies the renewal offer. Rather, section 2523.5 (a) specifically refers to subdivision (c) as controlling, and subdivision (c) gives the tenant the option in such cases to choose the commencement date of the lease, subject to the restrictions set forth.

By reason of subdivision (c), defendant was not entitled to treat the renewal lease as a nullity. However, the draconian remedy sought by plaintiffs—total destabilization of the apartment—is unacceptable due to the ambiguities contained in plaintiffs' renewal form, which made reference to the tenant's rights "prior to the expiration of the *existing* lease" (emphasis added). In reality, the existing lease referred to had already expired. Accordingly, we view defendant's inaction as largely, although not entirely, excusable.

We conclude that a fair balancing of the equities demands recognition of the basic relationship between the parties as that of landlord and rent-stabilized tenant, on condition that defendant take the affirmative step of signing the proffered renewal lease. For her unjustified inaction, this tenant should be required to pay, and the landlord should receive, the rent to which the latter would have been entitled by operation of the Rent Stabilization Code. Of course, should defendant fail to sign the renewal lease to be presented by plaintiffs, she would lose her right to renew as a rent-stabilized tenant. Concur—Ellerin, P. J., Rosenberger, Wallach and Saxe, JJ.