McKeon, P.J.
(dissenting). Inasmuch as tenant, during her extended residency period in California, did not maintain an “ongoing, substantial, physical nexus with the [stabilized] premises for actual living purposes” (Emay Props. Corp. v Norton, 136 Misc 2d 127, 129 [1987]) by reason of her daughter’s presence in the subject Manhattan apartment or otherwise, I respectfully dissent and would award landlord the possessory judgment warranted by its persuasive trial proof.
A mother, who lives elsewhere, cannot rely on a child’s residence to establish her own. In New York, the legal presumption is that the residence of the child is with the parent, not vice versa (see Hughes v Lenox Hill Hosp., 226 AD2d 4 [1996]). Thus, even assuming that tenant’s 15-year-old daughter continued to live — for much of the time alone and without adult supervision — in the Manhattan apartment during the year-and-a-half period of tenant’s absence, and that the daughter did not reside with any of the other close family members who lived nearby, the daughter’s putative presence in the apartment should be given little, if any, weight in determining the tenant’s primary residence, and certainly cannot be viewed as the “most compelling evidence” of tenant’s residency, as the trial court characterized it. The trial court’s reliance on Berwick Land Corp. v Mucelli (249 AD2d 18 [1998]) is totally misplaced. In fact, Berwick Land supports a finding of nonprimary residence, as it stands for the proposition that the presence of a family member in a regulated apartment is not imputed to a tenant of record, not living in the apartment, for primary residence purposes.
This is not the typical case where a rent-stabilized tenant spent periods of time away from a New York primary residence to care for ailing parents. Tenant, by her own admission, moved to California and lived there full time. In truth, she abandoned her New York apartment, leaving behind a 15-year-old daughter to fend for herself. While asserting that the motivation for the move was a desire to care for her sickly mother and father, tenant, a nurse, could not even remember at her deposition the *102 various ailments said to have afflicted them. Moreover, no medical documentation was offered at trial to substantiate any claimed parental maladies. Tenant’s daughter, who did not testify at trial, never mentioned at her deposition, in referring to her mother’s move to California, that it was motivated by her grandparents’ failing health. This is hardly surprising since, at the time of mother and daughter’s depositions, tenant’s avowed legal aim, as evidenced by the pleadings (as well as her lawyer’s time records which, in fairness, were not before the court below when it issued its ruling) was to obtain succession rights for the daughter. Hence, establishing that tenant’s presence in California was motivated by the medical needs of her parents was then of little strategic significance (see Rent Stabilization Code [9 NYCRR] § 2523.5 [b]).
Significantly, it is undisputed that tenant never lived with her parents in California, even though she falsely used their address to obtain a California driver’s license, almost a year before she claims to have moved there. Tenant worked full time in California, and her filing of a California tax return, while minimized by the majority as “ambivalent,” was a clear expression that tenant considered herself a California resident. The fact that she failed to file California tax returns for the following year, when she concedes she worked exclusively in California and was likely obligated to do so, was a decision probably motivated by the institution of this proceeding and her desire to bolster her claim of New York primary residency. Parenthetically, when tenant moved back to New York, she claimed that her father’s health — he was then pushing 90 — had sufficiently improved to permit her to do so. Of course, that raises the fundamental question of whether tenant’s parents were so ill as to justify her moving full time to California in the first instance. While tenant has several siblings, including two in the New York area, none was called at trial. In short, we have only tenant’s unsubstantiated testimony to describe her parents’ medical circumstances and needs.
Turning to other reasons advanced by the majority in support of their position, the frequency of tenant’s claimed return visits to New York was belied by the testimony of the daughter at her deposition. The maintenance of New York bank accounts adds little to tenant’s claim of New York primary residence since it was necessary to have available sources of funds for the daughter left behind. Whether tenant owned real property or voted in California, as noted by the majority, adds nothing. There is no *103 evidence that she owned real property in New York or voted with any regularity. Of course, tenant left furnishings in the New York apartment in which her daughter allegedly was living.
From a procedural standpoint, the trial court erred in refusing to give landlord the benefit of an adverse inference for tenant’s failure to call either of her sisters who lived in the New York area. It is well settled that a relative is “perforce deemed” to be under the control of a party (see People v Rodriguez, 38 NY2d 95, 98 n 1 [1975]). In the case of one sister, a professor at Baruch College, she worked mere minutes away from the New York apartment where tenant’s teenage daughter allegedly lived alone. She was also a short subway ride from the courthouse. Surely, she would have been expected to testify “favorably” about her sister’s claimed need to move to California and whether her niece lived alone in the New York apartment.
Finally, notwithstanding the trial court’s stated sympathy for tenant’s “unenviable” circumstances, my colleagues in the majority are remarkably restrained in their comments about her choice to leave a 15-year-old daughter behind to live alone in a New York City apartment. Let me not mince words. Such testimony, if true, and the decision underpinning it, give new meaning to the phrase “incredible as a matter of law.” lies, the court below portrayed tenant as a conflicted person, torn between parents and child, desirous of allowing her daughter to complete high school at a specialized, prestigious New York institution, yet called by duty to be at the side of her parents. But the decision to leave a teenager to fend for herself 3,000 miles away is one that few parents in good conscience would make and is one which is hardly deserving of judicial approbation.
McCooe and Davis, JJ., concur; McKeon, EJ., dissents in a separate opinion.