[899 NYS2d 1]

Santorini Equities, Inc., Respondent, v Francisco Picarra et al., Appellants.

First Department, January 28, 2010

## APPEARANCES OF COUNSEL

*José Luis Torres*, White Plains, for appellants.

*Kossoff & Unger*, New York City (*Michael David Nachtome* of counsel), for respondent.

## OPINION OF THE COURT

CATTERSON, J.

In this action, Santorini Equities, Inc. (hereinafter referred to as the landlord) sought to terminate a tenancy based upon nonprimary residency. After a nonjury trial, the court awarded possession of the subject premises to the landlord. The trial court held that the tenant did not occupy his apartment for at least 183 days in the year 1999 and possibly 2000. Nevertheless, for the reasons set forth below, we reverse and find that the court improperly awarded possession to the landlord.

The plain language of the Rent Stabilization Law and its calculation of the effective date of the term of an untimely renewal lease cannot be ignored. It is beyond question that in order to terminate a rent-stabilized tenancy based solely on the allegation of nonprimary residence, the landlord is required to *notify* the tenant of its intention not to renew the lease within a very specific time period: not more than 150 days nor less than 90 days prior to the expiration of the lease. (Rent Stabilization Code [9 NYCRR] § 2524.2 [c] [2]; § 2524.4 [c]; *Golub v Frank*, 65 NY2d 900 [1985].) No proceeding to terminate a tenancy on the grounds of nonprimary residence can even be commenced without a valid *Golub* notice. (*83rd St. Assoc. v Beldough*, 118 AD2d 520 [1st Dept 1986]; *Crow v 83rd St. Assoc.*, 116 AD2d 1048 [1st Dept 1986].) The expiration date of the lease is obviously critical to any calculation of this statutory time frame.

The instant case requires a calculation based upon a late renewal lease provided to the tenant, appellant Francisco Picarra

(hereinafter referred to as the tenant). The statute regarding notification of lease renewal in the rent stabilization scheme provides, in relevant part, as follows:

"Section 2523.5 Notice for renewal of lease and renewal procedure

"(a) On a form prescribed or a facsimile of such form approved by the DHCR, dated by the owner, every owner, other than an owner of hotel accommodations, shall notify the tenant named in the expiring lease not more than 150 days and not less than 90 days prior to the end of the tenant's lease term, by mail or personal delivery, of the expiration of the lease term, and offer to renew the lease or rental agreement at the legal regulated rent permitted for such renewal lease and otherwise on the same terms and conditions as the expiring lease. The owner shall give such tenant a period of 60 days from the date of service of such notice to accept the offer and renew such lease."

It is uncontroverted that the landlord failed to comply with 9 NYCRR 2523.5 (a) and proffered an untimely renewal lease on August 15, 2000. Indeed, it was approximately 15 years too late.

Where, as here, the landlord has failed to comply with the regulations cited above, the regulations further provide that

"(c) (1) Where the owner fails to timely offer a renewal lease or rental agreement in accordance with subdivision (a) of this section, the one- or two-year lease term selected by the tenant shall commence at the tenant's option, either (i) on the date a renewal lease would have commenced had a timely offer been made, or *(ii) on the first rent payment date occurring no less than 90 days after the date that the owner does offer the lease to the tenant*" (9 NYCRR 2523.5 [c] [1] [emphasis added].)

Furthermore, under the regulation in effect at the time of the tenant's renewal in 2000, the date for commencement of the new lease term was at least 120 days (instead of the 90 days that applies now) after the landlord offered the renewal lease to the tenant. (*See* former 9 NYCRR 2523.5.)

The landlord's lease renewal notice dated August 15, 2000 had the lease renewal term already written in as commencing on "9/1/00," some 16 days (instead of 120 days) after the form

was admittedly presented to and signed by the tenant. Because the lease renewal offer was late, the new lease term could not, by regulation, begin until 120 days after August 15, 2000, or on December 13, 2000.

The trial court was entirely correct in this respect. It correctly held that it was bound by precedent from this Court which considered this precise issue. In *Hughes v Lenox Hill Hosp.* (226 AD2d 4 [1st Dept 1996], *lv denied* 90 NY2d 829 [1997]), we considered the import of section 2524.2 (c) (2) in the context of succession rights to a tenancy in a rent controlled apartment. That *Hughes* involved succession rights rather than the issue of nonprimary residence is of no moment as the following passage demonstrates:

> "The one factual dispute arises from confusion regarding the term of the renewal lease in effect at the time of Mrs. Black's death. Defendant landlord correctly construes the renewal agreement she executed on December 5, 1987 as extending the lease term until March 31, 1990. The renewal agreement states that 'your new rent will commence 4/1/88' while reciting that the tenant's present 'lease will expire 11/30/87.' Contrary to Supreme Court's misapprehension, the end of the original lease term is not dispositive of the commencement of the renewal period. Where the landlord gives late notice of its offer to renew or otherwise delays in furnishing the tenant with the renewal agreement, the effective date of the renewal lease is extended (*Matter of Sommer v New York City Conciliation & Appeals Bd.*, 116 AD2d 457, 459). Here, the notice of lease renewal is dated December 1, 1987 and must, by regulation and case law (9 NYCRR 2524.2 [c] [2]; *Crow v 83rd St. Assocs.*, 68 NY2d 796; *Golub v Frank*, 65 NY2d 900), give the tenant at least 120 days' notice. Therefore, the renewal lease term cannot begin prior to April 1988, and defendant is correct in its assertion that its term extends from April 1, 1988 to March 31, 1990." (226 AD2d at 8-9.)

The landlord in *Hughes* served the *Golub* notice in November 1989. We found such notice of the landlord's intention not to renew the lease timely because it was within the statutory time period of "150 [to] 120 days prior to expiration date of the renewal lease on March 31, 1990." (226 AD2d at 16.) We came to

this conclusion on a plain reading of section 2524.2 (c) (2) and in derogation of the date originally entered on the renewal lease by the landlord. The Appellate Term subsequently followed this precedent in *KSB Broadway Assoc. v Sanders* (191 Misc 2d 651, 652 [1st Dept 2002]), holding that "[t]he language of the code is clear and unambiguous, and does not contemplate examination of 'the equities' in each case to determine the commencement date of the renewal lease."

Our decision in *South Park Assoc. v Toledano* (259 AD2d 306 [1st Dept 1999], *lv denied* 94 NY2d 755 [1999]), relied on by the landlord, does not alter the conclusion. *South Park* merely stands for the proposition enunciated therein, that a tenant's obligation to sign an untimely proffered renewal lease is controlled by section 2523.5 (a) and (c). Furthermore, "section 2523.5 (a) specifically refers to subdivision (c) as controlling, and subdivision (c) gives the tenant the option in such cases to choose the commencement date of the lease, subject to the restrictions set forth." (259 AD2d at 308.)

The landlord's view in this case improperly creates a third option for commencement of the lease term not described in 9 NYCRR 2524.2 (c) (2): namely, the date on the untimely renewal lease prepared by the landlord. When pressed at oral argument for the authority for this addition to the Rent Stabilization Code, counsel for the landlord offered none. Such view is not only bereft of authority but contrary to clear precedent from this Court.

Accordingly, the order of the Appellate Term of the Supreme Court, First Department, entered on or about April 23, 2008, which affirmed a final judgment of the Civil Court, New York County (Ulysses B. Leverett, J.), entered February 7, 2007, awarding possession of the subject premises to petitioner landlord in this proceeding seeking to terminate a tenancy based upon nonprimary residency, should be reversed, on the law, the holdover petition denied, and the proceeding dismissed, without costs.

TOM, J.P., FRIEDMAN, MOSKOWITZ and RICHTER, JJ., concur.

Order of the Appellate Term of the Supreme Court, First Department, entered on or about April 23, 2008, reversed, on the law, the holdover petition denied, and the proceeding dismissed, without costs.