The St. Luke's-Roosevelt Hospital Center , Petitioner-Landlord-Respondent, 
against
WestSide Radiology Associates, P.C., a/k/a West Side Radiology Associates, P.C., Respondent-Tenant-Appellant, -and- RadNet, Inc., Respondent-Undertenant-Appellant, -and- "XYZ Corp.," "John Doe" and "Jane Doe," Respondents-Undertenants.



Tenant and undertenant RadNet, Inc., appeal from an order of the Civil Court of the City of New York, New York County (Carolyn Walker-Diallo, J.), entered on or about October 4, 2018, and a final judgment (same court and Judge), entered October 23, 2018, after a nonjury trial, which awarded possession to landlord in a holdover summary proceeding; an order (same court and Judge), entered December 31, 2018 and a judgment (same court and Judge), entered January 4, 2019, after a hearing, which awarded landlord attorneys' fees in the principal sum of $335,212.24; and a judgment (same court and Judge), entered January 10, 2019, after a hearing, which awarded landlord use and occupancy in the sum of $431,560.23 against tenant.




Per Curiam.
Final judgment and judgment (Carolyn Walker-Diallo, J.), entered, respectively, October 23, 2018 and January 10, 2019, affirmed, with one bill of $25 costs. Judgment (Carolyn Walker-Diallo, J.), entered January 4, 2019, modified by reducing landlord's recovery for attorneys' fees to the principal amount of $249,000; as modified, judgment affirmed, without costs. Appeal from orders (Carolyn Walker-Diallo, J.), entered, respectively, on or about October 4, 2018 and December 31, 2018, dismissed, without costs, as subsumed in the appeal from the aforementioned final judgment and judgments. 
The governing commercial lease agreement between The St. Luke's Hospital Center, as landlord, and WestSide Radiology Associates, as tenant, prohibited tenant from assigning the lease without landlord's prior written consent. The lease rider defines an assignment as a transfer of a "Controlling Interest," meaning "more than a fifty percent (50%) interest in the [stock of the corporate tenant]" or "the ability to control the decisions or affairs of the [corporate tenant]." Paragraph 11(b)(ii) of the lease requires that any assignee be an active member of St. Luke's medical staff with admitting privileges. 
The trial court's determination that tenant breached the no-assignment provision of the lease is supported by a fair interpretation of the evidence (see Thoreson v Penthouse Intl., 80 NY2d 490, 495 [1992]), which shows that, in April 2015, undertenant RadNet, Inc., in effect, acquired tenant without notice to, or authorization by landlord. The April 2015 transaction, consisting of a Purchase Agreement and ancillary documents, effectively gave RadNet "the ability to control the decisions or affairs of [the tenant]" within the meaning of the plain terms of the lease rider, and gave to one Dr. John Crues, RadNet's medical director and board member, the absolute right to restrict the tenant shareholders' ability to exercise their own rights and interests as shareholders and board members. It is not disputed that Dr. Crues never had admitting privileges at St. Luke's Hospital.
Though tenant and RadNet attempted to structure their transaction in a way to circumvent the lease's no-assignment provision, they ultimately achieved what the lease prohibited, an unauthorized sale of tenant to an unrelated third party. In this regard, although no transfer of stock occurred between tenant and RadNet, the evidence showed that all of tenant's stock was irrevocably transferred into escrow, while tenant's shareholders relinquished their right to sell or transfer the shares without the prior written consent of Dr. Crues. In addition, while the underlying lease between landlord and tenant was excluded from the Purchase Agreement, RadNet's subsidiary, and not the tenant, was obligated to pay the "real ... property lease cost payments and expenses" for the subject premises (see Services Agreement, paragraph 3.3[c], ["Facilities""Expenses"]).
With respect to use and occupancy, the liquidated damages clause in the lease, providing for use and occupancy at 1.5 times the rent in the event of a holdover or upon tenant's failure to surrender the premises after the termination date, was not an unenforceable penalty, since damages could not be anticipated in 2010 when the lease was executed, and the amount fixed was not plainly or grossly disproportionate to the probable loss (see Tenber Assoc. v Bloomberg L.P., 51 AD3d 573, 574 [2008]).
The underlying notice of default served by landlord was reasonable in light of the attendant circumstances (see Oxford Towers Co., LLC v Leites, 41 AD3d 144 [2007]); Hughes v Lenox Hill Hosp., 226 AD2d 4, 18 [1996], lv denied 90 NY2d 829 [1997]). The predicate notice was facially sufficient, as it fairly stated the nature of landlord's claim and the facts necessary to establish the existence of grounds for eviction. The notice did not confuse the tenant or hinder the preparation of its defense. Notably, the evidence also showed that after tenant was served with a notice of default, it did not cure the violation and its application for Yellowstone relief was dismissed as untimely.
As to attorneys' fees, viewing the evidence presented in light of all relevant factors (see Matter of Freeman, 34 NY2d 1, 9 [1974]; Jordan v Freeman, 40 AD2d 656 [1972]), including [*2]the nature and extent of the services, the actual time spent, the necessity therefor, the nature of the issues involved, the professional standing of counsel and the results achieved, we find that the amount of the fees awarded below was excessive to the extent indicated.
THIS CONSTITUTES THE DECISION AND ORDER OF THE COURT.
I concur I concur I concur
Decision Date: October 1, 2019