[673 NYS2d 635]

245 REALTY ASSOCIATES, Respondent, v ABE SUSSIS, as Court-Appointed Administrator of the Estate of ARTHUR SUSSIS, Deceased, et al., Appellants.

First Department, May 28, 1998

## APPEARANCES OF COUNSEL

*John D. Gorman,* New York City, for appellants.

*Howard Grun* of counsel, New York City (*Kaufman Friedman Plotnicki & Grun, L. L. P.,* attorneys), for respondent.

## OPINION OF THE COURT

TOM, J.

The issue presented is whether the successor-in-interest of a rent-stabilized apartment is entitled to attorneys' fees as the successful party in a holdover proceeding, pursuant to a clause in the lease conferring such a right on the tenant of record as well as successors-in-interest.

The deceased Arthur Sussis was the rent-stabilized tenant of apartment 9A at 105 West 73rd Street in Manhattan from December 1983 to February 1993, the time of his death. The last renewal lease expired on December 31, 1993. Respondent Donald Sussis, decedent's brother, had been the tenant of record of the premises prior to Arthur's tenancy. In 1985, Donald separated from his wife and thereafter moved back in with Arthur. It is undisputed for present purposes that respondent Donald Sussis resided with Arthur in the premises for at least two years prior to Arthur's death. In September 1993, Donald executed and returned a renewal lease form to the landlord. The accompanying letter from Donald's attorney advised the landlord of Arthur's death, that Donald had resided in the apartment with Arthur for five years and that Donald was exercising his right to a renewal lease under the Rent Stabilization Law.

In March 1994, the landlord, the holder of the shares and proprietary lessee for the premises, commenced a holdover proceeding against the estate of Arthur Sussis by Abe Sussis, administrator, and Donald Sussis, contending that the tenancy had terminated with the expiration of the renewal lease on December 31, 1993.

The respondents, in their answer, denied the allegations of the petition and asserted that Donald Sussis was entitled to succeed his brother as tenant under the Rent Stabilization Code and counterclaimed for attorneys' fees under Real Property Law § 234. Paragraph 20 of the lease provided for reciprocal rights to legal fees by the landlord as well as the tenant. Specifically for the tenant, reasonable legal fees would be recoverable in the event that the tenant successfully defended a lawsuit commenced by the owner, to the extent provided by Real Property Law § 234.

By decision and order dated August 17, 1995, Civil Court of the City of New York, New York County (Marilyn Shafer, J.), dismissed the petition with prejudice, finding that Donald had resided in the apartment from 1985 until Arthur's death, and hence had acquired statutory rights as a qualifying family member to his tenancy under 9 NYCRR 2523.5 (b) (1). The court also noted the landlord's failure to contest Donald's entitlement to attorneys' fees, which were granted, and allowed for a hearing in the event that the parties disputed the amount. Donald Sussis subsequently moved to restore the matter for a hearing to determine the amount of attorneys' fees.

The landlord cross-moved for reargument. The landlord argued that the occupant is not entitled to recover attorneys' fees under the lease since there was no privity of contract between the parties and that the landlord would not have been entitled to attorneys' fees if it had prevailed, which raises the issue of reciprocity, *infra*. Respondents argued that if an occupant is entitled to be offered a renewal lease by operation of the Rent Stabilization Code, then that party should be entitled to collect legal fees as per the lease when litigation is necessary to secure the offer. The court concluded that it was constrained by Appellate Term case law that required that the correlating right to collect attorneys' fees pursuant to Real Property Law § 234 not be accorded to those who legally succeed to tenant's rights by law only after prevailing in a holdover proceeding. By decision and order dated November 21, 1995, the court, granting reargument, modified its prior ruling only to the extent of denying the respondents' request for attorneys' fees.

By order entered November 29, 1996, Appellate Term (Ostrau, P. J., McCooe and Davis, JJ.) unanimously affirmed denial of attorneys' fees. Appellate Term found that although the rent-stabilized lease contained an enforceable attorneys' fee provision, it was enforceable only as a consequence of the contractual relationship between the landlord and the tenant of record. Appellate Term found that Donald's succession rights accrued only after adjudication of the holdover proceeding, so that he was not entitled to attorneys' fees incurred in defense of that proceeding. Appellate Term also found that if the landlord had prevailed, it would have had neither a statutory nor a contractual basis to seek fees from the evicted occupant, so that Real Property Law § 234 would not have been invoked, leaving the occupant without a legal predicate upon which to recover attorneys' fees. By order entered March 12, 1997, Appellate Term granted leave to appeal to this Court.

Real Property Law § 234 is triggered when the lease contains a provision regarding recovery of attorneys' fees in lease disputes. It was intended to "level the playing field" between landlords and residential tenants (*Matter of Duell v Condon*, 84 NY2d 773, 780). The statute addresses those situations where such reciprocity is not built into the lease, but, rather, the lease provides only for the landlord's recovery of legal fees. The statute then implies in the lease a covenant by the landlord to pay the tenant the reasonable attorneys' fees and expenses "incurred by the tenant as the result of the * * * successful defense of any action or summary proceeding commenced by the landlord against the tenant arising out of the lease" (Real Property Law § 234). Here, paragraph 20 explicitly provides for tenant's reciprocal right to recover attorneys' fees. The statute also was intended to discourage landlords "from engaging in frivolous litigation in an effort to harass tenants * * * into terminating legal occupancy" (*Matter of Duell v Condon*, 84 NY2d 773, 780, *supra; cf., Hughes v Lenox Hill Hosp.*, 226 AD2d 4, *lv dismissed* 90 NY2d 829). Parenthetically, given the absence of any merit to the landlord's holdover proceeding, especially in view of its failure to take even rudimentary steps to ascertain the occupant's residency status or to offer any concrete evidence to rebut Donald's proof of his occupancy of the premises, this is the very sort of frivolous litigation that the Legislature contemplated.

The family succession provision of the Rent Stabilization Code (9 NYCRR 2523.5 [b] [1]) states that when the tenant of record is entitled to a renewal lease, a qualifying family member, defined to include a sibling (*see*, 9 NYCRR 2520.6 *[o]*), who has resided with the tenant in that residence, as a primary residence, for no less than two years immediately prior to the tenant of record permanently vacating the unit, "shall be entitled to be named as a tenant on the renewal lease." The family succession provision of 9 NYCRR 2523.5 (b) (1) was intended to regulate "disruptive rent and eviction practices * * * [which are] essentially accomplished by requiring that landlords offer the option of lease renewal" (*Festa v Leshen*, 145 AD2d 49, 62) and to " 'spare[ ] family members the disruption of relocation at a time of emotional and possibly financial turmoil. Indeed, the thread that runs through the cases construing the succession provision is the need for continuity in possession' " (*Hughes v Lenox Hill Hosp.*, *supra*, at 15). We have noted that "in the ordinary course of events, a family member, who remains in the apartment following the departure

of the named tenant, will receive a renewal notice towards the end of the lease term, directed to the named tenant; the recipient will thereupon inform the landlord of the tenant's departure as well as his status as a family member; and, assuming there is no dispute regarding his status, the surviving family member will receive a renewal lease designating him tenant of record" (*Hughes v Lenox Hill Hosp., supra*, at 13-14).

The landlord relied on Appellate Term case law that declined to apply Real Property Law § 234 to succession rights cases involving rent-stabilized apartments since the successor tenant was not a signatory to the lease agreement. The Court of Appeals specifically has declined to rule on the validity of this line of cases (*Matter of Duell v Condon, supra*). We also take no position on whether those decisions are correctly decided since we are presented here with different circumstances. Those cases are distinguishable from the instant case by virtue of paragraph 32 of the present lease agreement.

Paragraph 32 of the lease between petitioner landlord and Arthur Sussis provided:

"32. SUCCESSOR INTERESTS

"The agreements in this Lease shall be binding on Owner and You and on those *who succeed to the interest of Owner or You by law*". (Emphasis added.)

Since the lease agreement was binding upon and benefited successors-in-interest, and Donald Sussis was a successor-in-interest to the tenant of record by operation of law, the clause of the lease granting him all rights under the lease, including recovery of attorneys' fees to the extent authorized by Real Property Law § 234, was operative. As such, notwithstanding that respondent is not a "tenant" under the prior lease as such is defined in the Rent Stabilization Code, which correlates that status with the signatory to a lease (9 NYCRR 2520.6 [d]), the occupant as a successor-in-interest by operation of paragraph 32 of the lease is entitled to succeed to all rights under the lease between the deceased tenant and landlord. We reject the reasoning that the right to attorneys' fees ripened only with the conclusion of the holdover proceeding so as to preclude recovery for legal fees incurred in defense of that proceeding. The occupant's rights as a successor-in-interest logically must relate back to the date creating his statutory rights, the death of the tenant of record. Nor should it change the result that his status as a qualified successor was ratified by judicial determination at a time after the tenant's death. The right to occupancy was extant before resolution of the holdover proceed-

ing. The holdover proceeding only resulted in judicial enforcement of that pre-existing right. Donald Sussis' right to collect attorneys' fees from the landlord became viable when he succeeded the interests of the deceased tenant at the time of death by operation of paragraph 32 of the lease. It is undisputed that rent still had to be paid for that period and that the rent would be governed by the lease.

Nor is it dispositive that the term of the lease existing at the time of the decedent's death had expired at the time the landlord commenced this action. As we have noted in the past, "the end of the original lease term is not dispositive of the commencement of the renewal period. Where the landlord gives late notice of its offer to renew or otherwise delays in furnishing the tenant with the renewal agreement, the effective date of the renewal lease is extended" (*Hughes v Lenox Hill Hosp.*, *supra*, at 8-9). When a landlord fails to provide a renewal lease, the expiring lease remains effective (9 NYCRR 2523.5 [d]). When the landlord wrongfully fails to provide a renewal lease, it should not be heard to claim that the original lease, and its rights thereunder, had lapsed.

The dissent is concerned that our ruling effectively vests succession rights automatically in the successor tenant upon the death of the named tenant, for which the dissent relies on *Hughes* (*supra*). However, the *Hughes* decision quite clearly speaks to a different point and invokes very different policy concerns. Moreover, our present ruling does not stand for that proposition. As Justice Rubin noted in *Hughes*, creating automatic vesting of succession interests would effectively place family succession matters beyond judicial review.

Rather, *Hughes* turned on a particular factual context, to which the regulatory analysis of 9 NYCRR 2523.5 (b) (1) was applied: neither the putative tenant, nor, in fact, any other family member, had resided in the deceased tenant's apartment for years after the death of the tenant of record. The putative tenant was an infant who shortly after the death of his mother moved out of the rent-stabilized apartment and resided with a guardian in a different State at all times up to the time of the action. The Court found that the putative tenant had relinquished possession of the apartment and waived any claim he might have had to succeed to the tenancy of his mother. In contrast, it is undisputed that respondent in the present case resided in the premises for the requisite period of time prior to the tenant's death (9 NYCRR 2523.5 [b] [1]), and thereafter continued to reside in the subject apartment at all

times. In no manner do we suggest that the vesting of statutory succession rights is automatic upon the death of the named tenant; only that the right to be offered the renewal lease as a successor-in-interest arose because of the tenant's death. If the landlord can demonstrate that the putative tenant is not a bona fide resident at the time the renewal lease is offered, then the presumption of abandonment and waiver of the right of succession operates (*Hughes v Lenox Hill Hosp., supra,* at 16-17). That circumstance allows the landlord to serve a notice of intent not to renew within the 150/120-day period prior to expiration of the lease or to seek termination of the lease on the grounds of nonprimary residency. *Hughes* simply allows that landlords have a remedy under the appropriate factual circumstances, not present herein.

However, our difference with the dissent is more fundamental, and turns on the difference between the occupant's status as a successor-in-interest and his eventual status as a tenant in his own right. There is a marked difference between the two. It follows that the occupant's right, created by statute and ratified by the court, to be offered the lease makes the occupant a successor-in-interest to the tenant, and that this successor status relates back to the time of death of the tenant of record. Under ordinary circumstances, the status of a successor-in-interest to the original tenant may have only limited relevance since no lease agreement has yet been entered into. The successor-in-interest is not yet a tenant. However, in this case the original lease, as noted, specifically contemplated the extension of certain benefits to successors-in-interest.

Insofar as the occupant's rights existed, even if not yet judicially enforced, during the period of the occupancy, there is nothing "manifestly unfair" (*Wells v East 10th St. Assocs.*, 205 AD2d 431, 432, *lv denied* 84 NY2d 813) in imposing attorneys' fees on the landlord, which commenced the holdover proceeding. Remedial statutes should be liberally construed (*Festa v Leshen*, 145 AD2d 49, 55-56, *supra*). As a remedial statute, Real Property Law § 234 should be accorded its broadest protective meaning consistent with legislative intent.

We also reject the contention that a prevailing landlord under these circumstances is penalized, in that it would not have a party against which to recover its own legal fees as ensured by the lease, thus defeating the reciprocity inherent in the application of Real Property Law § 234. Parenthetically, when the landlord claims that there are no rights under the lease to be asserted by the occupant, so that Real Property

Law § 234, a statute rooted in a particular lease provision, never comes in to play, the landlord cannot then use the statute as a shield when it eventually is not vindicated in its basis for eviction. If the landlord is correct that the rights accorded by Real Property Law § 234 are not relevant in this case, then reciprocity is not a relevant consideration. In any event, this landlord enjoyed a reciprocal right to recover attorneys' fees. The estate was joined as a party. The landlord characterizes the estate as a mere nominal party, which could not have renewed the lease in its own name. Yet the landlord also concedes that the estate would have been liable for nonpayment of rent during the remaining term of the lease, and notes that the refusal of the estate to vacate the premises instigated the holdover proceeding, which undermines the purported nominal status of the estate urged by the landlord. Nor does the landlord deny that the estate would potentially be liable for use and occupancy during the holdover period if the landlord had prevailed. As such, the estate in this case was not a party in name only. If the landlord had prevailed, resulting in the eviction of Donald as well as a declaration that the estate had no further right of occupancy, the estate, at the least, would have been liable for legal fees under the lease (*Classic Props. v Martinez*, 173 Misc 2d 556 [rejecting landlord's defense of lack of mutuality in claim for attorneys' fees under Real Property Law § 234; landlord could have joined estate and, if successful, could have recovered attorneys' fees from estate]). Hence, the landlord cannot claim that our construction of the attorneys' fees lease provision, as extended to successor parties by operation of paragraph 32 of the lease, grants a right to successor tenants while depriving the landlord of the corresponding right. Nor does it defeat reciprocity that the landlord would collect fees from one rather than another successor-in-interest to the tenant of record: both are joined as parties in the same proceeding, so the landlord's right to fees would have been assured.

Accordingly, the order of the Appellate Term of the Supreme Court, First Department, entered November 29, 1996, affirming the order of Civil Court of the City of New York, New York County (Marilyn Shafer, J.), entered on or about November 21, 1995, which, upon reargument, denied respondent Donald Sussis attorneys' fees, should be reversed, on the law and the facts, with costs, the motion for fees granted, and the matter remanded for proceedings to determine the amount.

ANDRIAS, J. (dissenting). I dissent and would affirm.

Respondent's successful defense of his right, as a successor

family member, to be named as the tenant on a renewal lease for the subject rent-stabilized apartment does not entitle him to recover attorneys' fees under Real Property Law § 234. Respondent's right to be offered a renewal lease for the apartment derives from the Rent Stabilization Code (9 NYCRR 2523.5 [b] [1]), not the terms of the expired lease, and, as the unanimous Appellate Term explained, respondent did not become a "tenant", as defined by the Code (9 NYCRR 2520.6 [d]), until his status as successor family member was adjudicated in this very proceeding. I also agree with the Appellate Term that *Matter of Duell v Condon* (84 NY2d 773) is distinguishable in view of rent control's different, and much broader, definition of "tenant" (Administrative Code of City of NY § 26-403 [m]).

The majority concludes that the occupant's statutory right to enter the renewal lease as a tenant relates back to the date creating his statutory rights (i.e., his brother's death). That right, it states, corresponds with the occupant's obligation to pay rent, also arising at that time, and such right and obligation were extant prior to the resolution of the holdover proceeding.

Such reasoning is contrary to this Court's decision in *Hughes v Lenox Hill Hosp.* (226 AD2d 4, *lv dismissed* 90 NY2d 829) and the majority's attempt to distinguish that case on its facts is unpersuasive. The plaintiff there also argued that operation of 9 NYCRR 2523.5 (b) (1) is automatic upon the death of the named tenant.

This Court (per Rubin, J.) disagreed, stating: "Under the regulation, a family member is 'entitled to be named as a tenant on the renewal lease' only 'if an offer is made to the tenant' to renew the lease * * * Had the intent been to immediately install the family member as tenant of record, the regulation would doubtless provide for transfer of the leasehold upon the named tenant's permanent removal from the premises. It would have been a simple matter to have worded the provision to recite that the family member 'shall' be named as the tenant on the renewal lease and not merely that he 'shall be entitled to be named' as such" (*supra,* at 14 [citations omitted]).

Unlike rent control, where a successor statutory tenant is entitled to attorneys' fees pursuant to Real Property Law § 234 even if not a signatory to the lease, the denial of attorneys' fees to a prevailing successor such as plaintiff is "premised upon the contractual nature of the *rent stabilization* scheme, which more narrowly defines the term 'tenant' as persons named on a

lease as lessees" (*Classic Props. v Martinez*, 173 Misc 2d 556, 557 [emphasis in original]).

Contrary to the majority's holding, and as recognized by this Court in *Hughes v Lenox Hill Hosp.* (*supra*, at 18), upon the death of a tenant " 'the leasehold interest passes as personal property to the estate * * * which remains liable for the payment of rent' * * * [and] 'an executor has the right, until the expiration of the lease, to possession of the demised premises in his capacity as representative of the deceased tenant's estate' " (quoting *Joint Props. Owners v Deri*, 113 AD2d 691, 693-694 [Sullivan, J.] [citations omitted]).

The majority's statement that it takes no position on the line of cases relied upon by the Appellate Term and its attempt to distinguish this case from them by virtue of paragraph 32 of the lease, as well as its reliance upon paragraphs 20 and 32 of the lease and its assertion that respondent is a successor-in-interest "by operation of paragraph 32 of the lease", are likewise unavailing. The reason that the Court of Appeals declined to rule on the validity of those cases in *Matter of Duell v Condon* (*supra*, at 782) was that those cases involve rent stabilization whereas *Duell* involved rent control. Moreover, paragraphs 20 and 32 merely provide that the agreements in the lease, including the right to attorneys' fees pursuant to Real Property Law § 234, become binding upon "those who succeed to the interest of Owner or You [tenant] *by law*" (emphasis added). However, a qualifying family member succeeds to the interest of the deceased tenant of record only upon signing the renewal lease, whether pursuant to court order or otherwise.

The majority's assertion that respondent is a successor-in-interest "by operation of paragraph 32 of the lease" is not only unsupported by law or reason, it is seemingly contradicted by its later statement that respondent's right "created by statute and ratified by the court, to be offered the lease makes the occupant a successor-in-interest to the tenant, and that this successor status relates back to the time of death of the tenant of record." Respondent's right, if any, to succeed to the deceased tenant's interests in the subject apartment clearly derives from the applicable provisions of the Rent Stabilization Code and not from the terms of the lease.

Even if the lease did not contain paragraph 32, petitioner landlord was required to offer the identical lease, including the reciprocal right to attorneys' fees, to any qualifying family member seeking a renewal lease. The option of forfeiting his or her rights or rejecting the renewal lease offered and vacating

the premises is always available to such qualifying family member. Further buttressing the conclusion that any right respondent had to a renewal lease was inchoate at the time of the tenant's death is the requirement of Rent Stabilization Code § 2523.5 (e) that, where, as here, an owner has not been advised of the name of any family member residing in the tenant's household, any such person claiming succession rights has *"the affirmative obligation to establish such right"* (emphasis added).

Moreover, mutuality of obligation for attorneys' fees is not established merely by the fact that the estate and the successful successor are joined in the same proceeding. Just as the qualifying family member was not liable for payment of rent until he signed the renewal lease, neither would he have been liable for attorneys' fees in the event he were unsuccessful. Even if petitioner owner were awarded attorneys' fees against the estate, which proved uncollectible, it would be unable to recover them from the potentially qualifying family member.

WALLACH, J. P., RUBIN and WILLIAMS, JJ., concur with TOM, J.; ANDRIAS, J., dissents in a separate opinion.

Order, Appellate Term, Supreme Court, First Department, entered November 29, 1996, which affirmed an order of the Civil Court of the City of New York, New York County, entered on or about November 21, 1995, reversed, on the law and the facts, with costs, the motion for attorneys' fees granted, and the matter remanded for proceedings to determine the amount.