OPINION OF THE COURT
Rolando T. Acosta, J.
This summary holdover proceeding was tried before the court without a jury on September 23 and 30, 2003. At issue is *194 whether respondent has succession rights to the subject premises located at 2255 Fifth Avenue, apartment 10 E, New York, New York 10037. After considering all the testimony and exhibits the court finds in favor of petitioner.
The primary and novel issue for this court’s consideration is whether an occupant claiming succession of premises subject to the Rent Stabilization Code can establish succession rights where that occupant affirmatively engages in deceptive acts, such as forging a renewal lease, that effectively prevent a landlord from timely asserting his claim to possession of the subject premises.
A grandchild may succeed to a rent-stabilized apartment under the Rent Stabilization Code as a traditional family member provided that she has resided, as her primary residence, with the tenant of record for at least two years before the tenant permanently vacated the apartment. (Rent Stabilization Code [9 NYCRR] § 2523.5 [b] [1]; § 2520.6 [o] [1].) The burden is on the prospective tenant to establish succession rights by a preponderance of the evidence. (300 E. 34th St. Co. v Habeeb, 248 AD2d 50, 55-56 [1st Dept 1997].) While the Rent Stabilization Code provides four factors which may be considered in determining whether a housing accommodation subject to the Code is occupied as a primary residence, by the Code’s express language, a court is not limited to these four factors in determining whether a primary residence has been established. (9 NYCRR 2520.6 [u].)[1]
In the present case, respondent established through birth and death certificates, as well as through testimonial evidence, that she was in fact Elaine Alliks’s granddaughter (Elaine Alliks was the tenant of record). The harder question for the court is whether respondent lived with Alliks in the subject premises as *195 her primary residence for two years prior to Alliks’s death.[2] Respondent, having chosen to live a lifestyle devoid of the usual trappings associated with urban living, failed to produce a single document traditionally recognized as indicia of primary residence to corroborate her claim that she lived in the apartment for the required two years. The absence of documentary proof notwithstanding, respondent established through testimonial evidence that she resided in the subject premises as her primary residence for two years prior to Alliks’s death.
First, this court credits respondent and her witnesses’ testimony that 90-year-old Elaine Alliks required help in her advanced age, especially given the fact that her 92-year-old husband was living in a nursing home. The family decided that respondent, who had been separated from her husband for over 20 years, was in the best position to care for her grandmother, particularly given the situation of other family members. Respondent’s mother (Claudette Knibb) was 72 years old at the time of trial, and respondent’s sister (Robin Johnson) is married, has a son, and lives in the Bronx. Moreover, respondent credibly testified that she had been living in the subject premises since the early 1990s for the express purpose of taking care of her grandparents. Her testimony was corroborated by her sister and a neighbor, a longtime tenant residing across the hall from the subject premises and with no apparent interest in having respondent succeed to the apartment.
That petitioner’s manager had no knowledge of respondent prior to the year 2000 is hardly dispositive of the relevant issue, namely, whether respondent did in fact live in the subject premises. (300 E. 34th St. Co. v Habeeb, 248 AD2d 50, 53 [1st Dept 1997], citing Matter of Rose Assoc. v State Div. of Hous. & Community Renewal, 121 AD2d 185 [1st Dept 1986].) Moreover, petitioner, as in 300 E. 34th St. Co. v Habeeb, offered no evidence to establish that respondent actually lived elsewhere during the relevant time in question. (Id. at 53.) Accordingly, this court, crediting respondent’s witnesses, finds that respondent established that she lived in the subject premises as her primary residence for the required two-year period.
Contrary to petitioner’s argument at trial, a court may find “primary residence” relying solely on testimonial evidence. (300 E. 34th St. Co. v Habeeb, supra, 248 AD2d at 55.) In facts re *196 markably similar to the present case, the Appellate Division reversed the Appellate Term for, inter alia, “effectively impos[ing] a legal requirement that a prospective tenant provide documentary evidence of the change of address, a construction required neither by statute nor by controlling case law.” (300 E. 34th St. Co. v Habeeb, supra, 248 AD2d at 55.) The Court went on to state that “[t]he question posed by the Appellate Term’s ruling then, is whether documentary evidence is necessary as well as sufficient. We conclude that it is not.” (Id.) “Although we have found ‘the traditional indicia of primary residence,’ including driver’s license, voter’s registration, tax returns, telephone and bank records, to be competent evidence establishing a period of residency ... we have not found it to be required evidence. While documentation, or the absence thereof, might be a significant factor ... in evaluating primary residence, especially in the case of the dubious credibility of witnesses, it would not be a dispositive factor . . . especially when there is a preponderance of credible personal testimony.” (Id. [emphasis added and citations omitted]; see also 243 Realty v Buksha, NYLJ, Dec. 11, 1991, at 25, col 2 [Civ Ct, NY County] [respondent established that she lived with her father as a primary residence for more than two years through testimonial evidence from three other neighbors who saw her in the building frequently over a period of more than two years]; cf. 23 Jones St. Assoc. v Keebler-Beretta, 284 AD2d 109 [1st Dept 2001] [“(w)hile documentary evidence can be significant in determining primary residence (in a rent controlled apartment), it is not essential, and it does not necessarily preponderate over inconsistent testimonial evidence”].)[3]
But the court’s inquiry does not end here. The court is now constrained to consider the effect of respondent admittedly forging her grandmother’s signature on the renewal lease after the death of her grandmother. For the reasons stated in this decision, the court finds that respondent forfeited her right to succeed to her grandmother’s apartment when she forged her grandmother’s signature. Respondent’s forgery prejudiced the landlord by preventing it from timely, and on its own terms, asserting its right to recover possession of the subject premises. In *197 addition, respondent put herself in control of the time sequence to assert her affirmative defense of succession.
In very candid testimony, respondent conceded that she and Ms. Alliks hid her presence in the subject premises from the landlord primarily at Ms. Alliks’s request. Respondent adapted a lifestyle based primarily on her ability to prevent the landlord from finding out that she resided in her grandmother’s apartment. She did not subscribe to any magazines or newspapers, nor listed her grandmother’s apartment as her residence in any contact with the outside world. Indeed, it appears that to conceal respondent’s presence in the apartment, Ms. Alliks went so far as to list respondent with the landlord as her emergency contact but with a Bronx address. The legality or soundness of Ms. Alliks’s advice aside,[4] after Ms. Alliks died, respondent’s conduct changed from passively preventing the landlord from ascertaining her presence in the apartment to forging her grandmother’s name on two lease renewals, thus forfeiting her rights to succeed under the Code.
The right of succession is exclusively derived from Rent Stabilization Code (9 NYCRR) parts 2520-2530. (Hughes v Lenox Hill Hosp., 226 AD2d 4, 5-6 [1st Dept 1996].) 9 NYCRR 2523.5 (b) (1) states that if a renewal offer is made to the named tenant pursuant to 9 NYCRR 2523.5 (a) “and such tenant has permanently vacated the housing accommodation, any member of such tenant’s family [including granddaughter][5] . . . who has resided with the tenant in the housing accommodation as a primary residence for a period of no less than two years. . . immediately prior to the permanent vacating of the housing accommodation by the tenant. . . shall be entitled to be named as a tenant on the renewal lease” (id. at 10, 13-14 [emphasis added]). As the Hughes court emphasized, the right to succession is not automatic. (Id. at 14 [“(fit would have been a simple matter to have worded the provision to recite that the family member ‘shall’ be named as the tenant on the renewal lease and not merely that he ‘shall be entitled to be named’ as such”].) Implicit in Hughes is that the “potential tenant” must assert her rights within the Code’s framework. (Id.)
Thus, “in the ordinary course of events, a family member, who remains in the apartment following the departure of the named tenant, will receive a renewal notice towards the end of the lease term, directed to the named tenant [and) the recipient will thereupon inform the landlord of the tenant’s departure as well as his status as a family member . . . .” (Id. at 13-14 [emphasis added].) The surviving family member, like the ten *198 ant of record, has 60 days from the date of service of the notice for renewal of lease to accept the renewal lease. (9 NYCRR 2523.5 [b] [3].) Significantly, 9 NYCRR 2523.5 (c) (2) protects the tenant of record in the event the “tenant” — not the family member[6] —fails to renew in a timely fashion by simply deeming the lease “to have been renewed [by the tenant] upon the same terms and conditions” as if the renewal lease offer had been timely accepted. (9 NYCRR 2523.5 [c] [2] [emphasis added].)
The automatic renewal protection that the Code extends to the “tenant,” however, is not conferred on the “family member” who resides in the subject premises without the landlord’s knowledge. In that situation, the Code specifically places on the person seeking succession rights the “affirmative obligation to establish such right [of renewal].” (9 NYCRR 2523.5 [e].) Thus, it is upon the family member’s notification to the landlord that the landlord finds out that a family member is seeking succession and, “assuming there is no dispute regarding [her] status, the surviving family member will receive a renewal lease designating [her] tenant of record.” (Hughes at 13-14.) Of course, if the landlord disputes the right to succession, she/he could start a licensee holdover proceeding pursuant to the Code.
In the present case, Ms. Alliks’s lease term ended on June 30, 2000, but she died approximately six months earlier. Petitioner, pursuant to 9 NYCRR 2523.5 (a), served Ms. Alliks with a lease renewal to commence on July 1, 2000. At that juncture, respondent “was only a potential tenant, ‘entitled’ to be designated a named tenant on a ‘renewal lease’ ” ’(Hughes v Lenox Hill Hosp., supra, 226 AD2d at 17), which would not commence until July 1, 2000. It was, therefore, incumbent on respondent to inform petitioner of Ms. Alliks’s permanent departure and assert her family status. It is irrelevant that up to that point Ms. Alliks or respondent had not informed petitioner of her presence in the apartment. (9 NYCRR 2523.5 [e].) Instead of “affirmatively” establishing her rights to the apartment, however, respondent forged her grandmother’s signature to the lease renewal commencing July 1, 2000, and a subsequent lease renewal for a period ending June 30, 2002.
The consequences of the forgery are many. First, as noted above, the right of succession is exclusively derived from the *199 Rent Stabilization Code (Hughes v Lenox Hill Hosp., supra, 226 AD2d at 5-6), and since respondent did not follow the established procedure, she should not be entitled to succeed under the Code.
Second, although respondent’s “successor status relates back to the time of [her grandmother’s] death” (245 Realty Assoc. v Sussis, 243 AD2d 29, 35 [1st Dept 1998]; Edelstein & Son v Levin, 1 Misc 3d 685 [Civ Ct, NY County 2003]), her failure to “affirmatively” establish her right of renewal denied petitioner the opportunity to investigate and contest her status as a potential tenant at an earlier date. Indeed, to petitioner’s detriment, the former managing agent and the former head of security, both of whom could have offered relevant testimony, are no longer employed by petitioner and it has no records as to their whereabouts. Petitioner also periodically purges its records and had the succession claim been timely made, it would have had better records to aid in its position. (Cf. Skrodelis v Norbergs, 272 AD2d 316, 317 [2d Dept 2000] [in support of defense of laches, “(p)rejudice may be established by a showing of. . . loss of evidence . . . resulting from the delay”].)
In addition, the forgery effectively changed the operational periods for establishing respondent’s succession defense. Had respondent not forged the renewal lease, the correct period for establishing succession would have been from 1997 to 1999. Petitioner, however, sought discovery of documents for the period of 2000 to 2002.
The two-year interval between the forged signature and when petitioner discovered the deceit unfairly allowed respondent to prepare her defense while hampering petitioner from asserting its rights under the Code. That respondent established the “primary residence” requirement in 2003 does not necessarily mean that she would have been able to do so in 2000.[7]
*200 Third, respondent’s acts of deceit undermined the integrity of the “rent stabilization scheme” (see, e.g., Matter of 151-155 Atl. Ave. v Pendry, 308 AD2d 543 [2d Dept 2003] [tenant forfeited right to rent-stabilized apartment by overcharging subtenants], and Continental Towers Ltd. Partnership v Freuman, 128 Misc 2d 680 [App Term, 1st Dept 1985] [same]), and in the process of doing so allowed her time to assert her rights to lapse.
Nor is this court’s ruling inconsistent with the policy concerns of the Rent Stabilization Code. Indeed, by insisting that respondent or any other “potential tenant” adhere to the procedure set forth in the Code in order to succeed to an apartment balances the competing policy concerns — “assuring the efficient use of scarce affordable housing accommodations while preserving the right of family members to remain in residential premises that they regard as home.” (Hughes v Lenox Hill Hosp., supra, 226 AD2d at 14-15.)
For the above-stated reasons, respondent is not entitled to succeed to the subject premises. Accordingly, petitioner is awarded a final judgment of possession. Issuance of the warrant of eviction is stayed until July 16, 2004. Respondent is ordered to pay use and occupancy in the amount of $584.44 per month commencing February 1, 2004, as well as $1,713.28 by February 16, 2004, as use and occupancy for the past 12 months.

. “Although no single factor shall be solely determinative, evidence which may be considered in determining whether a housing accommodation subject to this Code is occupied as a primary residence shall include, without limitation, such factors as listed below . . . .” (9 NYCRR 2520.6 [u] [emphasis added].) The factors include: (1) specifying an address different than the subject premises on tax returns, motor vehicle registration, driver’s license or other document filed with a public agency; (2) using a different address as a voting address; (3) occupancy of the subject premises for less than 183 days in a calendar year, except for temporary periods of relocation pursuant to section 2523.5 (b) (2) of the Code; and (4) subletting the subject premises. (9 NYCRR 2520.6 [u] [1]-[4].)

. Claude Alliks, Elaine’s husband, died after Elaine, but he had been institutionalized in a nursing home prior to Elaine’s death.

. Although 9 NYCRR 2520.6 was amended in 2000 to include subdivision (u), the amendment did not affect the reasoning in 300 E. 34th St. Co. v Habeeb. Indeed, as noted above, subdivision (u) merely lists factors that the court may consider in determining primary residence. It does not mandate that the court consider these factors or that they “preponderate over inconsistent testimonial evidence.” (23 Jones St. Assoc. v Keebler-Beretta, supra, 284 AD2d at 109.)

. See Real Property Law § 235-f, which protects the right of a tenant to have “immediate family” members live with him/her.

. 9 NYCRR 2520.6 (o).

. Matter of Duell v Condon, 84 NY2d 773, 781-782 (1995) (unlike rent controlled apartments, under the “New York City rent stabilization scheme, the term ‘tenant’ is narrowly defined to include only a ‘person or persons named on a lease as lessee or lessees, or who is or are party or parties to a rental agreement.’ [9 NYCRR 2520.6 (d)]”).

. The holding in this case is not inconsistent with 245 Realty Assoc. v Sussis (243 AD2d 29, 35 [1st Dept 1998]). In Sussis, the family member exercised his rights within the Code’s framework. Specifically, he properly executed and returned a renewal lease form to the landlord with an accompanying letter from his attorney advising the landlord of the tenant’s death, that he had resided in the apartment with the tenant for more than two years, and that he was exercising his right to a renewal lease under the Rent Stabilization Law. (Id. at 30.) In deciding that the family member was entitled to attorney’s fees under the lease which specifically granted him successor rights, the Court noted that “[t]he right to occupancy was extant before resolution of the holdover proceeding.” (Id. at 33-34.) The Court, however, went on to note, “[i]n no manner do we suggest that the vesting of statutory succession rights *200 is automatic upon the death of the named tenant; only that the right to be offered a renewal lease . . . arose because of the tenant’s death. If the landlord can demonstrate that the putative tenant is not a bona fide resident at the time the renewal lease is offered, then the presumption of abandonment and waiver of the right to succession operates.” (Id. at 35, citing Hughes at 16-17 [emphasis added].) Unlike Sussis, respondent in this case did not inform the landlord that she was entitled to succeed under the statute and intentionally prevented the landlord from finding out about the tenant’s death. Thus, petitioner was unable to demonstrate that respondent was not a bona fide resident at the time the renewal lease was offered, and instead was forced to make out its claim after the destruction of evidence several years later.