OPINION OF THE COURT
Per Curiam.
Final judgment, entered on or about December 29, 2005, reversed, with $30 costs, and final judgment awarded to petitioner upon its cause of action for possession. Issuance of the warrant of eviction shall be stayed for 30 days from the service of a copy of this order with notice of entry.
The trial evidence plainly shows, and it is not seriously disputed, that respondent Mankowitz engaged in a persistent and systematic pattern of deception in concealing his occupancy status from petitioner for nearly 13 years following the death of the stabilized tenant in November 1989 by forging the tenant’s name on no fewer than seven renewal leases and numerous rental payments. Respondent’s course of deception was studied and purposeful — indeed, it was a stratagem admittedly implemented upon advice of counsel — and persisted through October 2002, when respondent, unable to comply with petitioner’s request for the long-deceased tenant to notarize a document, finally informed petitioner of the tenant’s death and, for the first time, sought the issuance of a renewal lease in his (respondent’s) name.
On this record, and considering the severity and duration of respondent’s fraudulent conduct, respondent must be deemed to have waived any claim that he might have had to succeed to the tenancy. The law is settled that succession rights are not automatically vested in a potential successor upon the death of a stabilized tenant, but remain inchoate until the occupant’s “status as a qualified successor [is] ratified by judicial determination at a time after the tenant’s death” (245 Realty Assoc. v Sussis, 243 AD2d 29, 33 [1998]), with the evidentiary burden on the succession issue generally resting with the claimed successor (see Rent Stabilization Code [9 NYCRR] § 2523.5 [e]). To ensure the fair and orderly resolution of succession disputes, the governing Code provision (see 9 NYCRR 2523.5 [b] [1]) *55 contemplates the timely interposition of succession claims via a procedure described in the case law as follows:
“in the ordinary course of events, a family member, who remains in the apartment following the departure of the named tenant, will receive a renewal notice towards the end of the lease term, directed to the named tenant; the recipient will thereupon inform the landlord of the tenant’s departure as well as his status as a family member; and, assuming there is no dispute regarding his status, the surviving family member will receive a renewal lease designating him tenant of record” (245 Realty Assoc., 243 AD2d at 32-33 [emphasis supplied; internal quotation marks omitted]).
The ruse carried out by respondent herein, by which he affirmatively misrepresented both his status and that of the deceased tenant for well over a decade, “represented] a substantial departure from the ordinary course” (Hughes v Lenox Hill Hosp., 226 AD2d 4, 14 [1996], lv dismissed in part and denied in part 90 NY2d 829 [1997]) and, by necessity, unduly prejudiced petitioner in the prosecution of its eviction claim. In this regard, we note that respondent’s extreme delay in notifying petitioner of the tenant’s death — or, more accurately, his prolonged efforts to actively conceal the tenant’s death — prevented petitioner from undertaking a contemporaneous investigation into the emotional and financial underpinnings of respondent’s “nontraditional” family member succession claim. Respondent’s own proof on these issues, consisting largely of his own unsubstantiated testimony given at a trial that took place nearly 16 years after the tenant’s death, was less than compelling.* Thus, it cannot be said that respondent’s malfeasance did not affect the outcome of the case. The creation of a landlord-tenant relationship, whether through succession or otherwise, “should not be reduced to a matter of gamesmanship, seduction and artifice” (Coleman v Dabrowski, 163 Misc 2d 763, 765 [1994] [internal quotation marks omitted]).
To the extent respondent argues that petitioner’s building personnel were otherwise aware of the tenant’s death when it *56 occurred in 1989, the claim is unsupported by the record evidence and belied by respondent’s own subsequent efforts to actively conceal the tenant’s death. Respondent offers no explanation, and none readily comes to mind, as to why he would have engaged in the deceptive conduct glaringly reflected in the record if, as he now claims, petitioner knew all along of the tenant’s death (see 117 W. 57th St. Realty Corp. v Estate of Hultgren, 205 AD2d 363 [1994], revg for reasons stated in dissenting op of Justice William P. McCooe at App Term, NYLJ, Sept. 14, 1993, at 21, col 1).
Riverton Assoc. v Knibb (11 Misc 3d 14 [2005]), relied upon by respondent, does not compel a contrary result, since the misrepresentations involved in that case were “relatively short-lived” and were not found to have caused the petitioner therein any discernible prejudice in opposing the “persuasive” showing of traditional family member succession rights made by the granddaughter of the deceased tenant.
McCooe, J.E, Davis and Schoenfeld, JJ., concur.

 Without directly assessing the quantum of proof offered by respondent on the succession issue, we note that, although there were some indicia of emotional and financial commitment and interdependence between respondent and tenant, respondent acknowledged at trial that the two did not take vacations together, that he first became aware in 1988 that tenant had been diagnosed with prostate cancer back in 1979, that he did not arrange, pay for, or attend tenant’s funeral, and that he did not know whether tenant had credit cards, health insurance, or a pension or other type of retirement plan.