Park Cent. I LLC v Rose (2025 NY Slip Op 25062)

[*1]

Park Cent. I LLC v Rose

2025 NY Slip Op 25062

Decided on March 12, 2025

Civil Court Of The City Of New York, Bronx County

Tovar, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the printed Official Reports.

Decided on March 12, 2025
Civil Court of the City of New York, Bronx County

The Park Central I LLC AND 
 E&M LAFAYETTE APTS LLC, Petitioner-Landlord,

against
Carolyn Rose, WILLIAM L. JORDAN, NOVELL B. JORDAN, Respondents-Tenants

L&T Index No. 18200-19/BX

Law Offices of Scott D. Gross 
By: Scott D. Gross
Attorney for Petitioner
400 Post Avenue, Suite 400B
Westbury, New York 11590
Mobilization for Justice
By Rochelle Watson
Attorney for Respondent Carolyn Rose
100 William Street
6th Floor
New York, New York 10038
The Legal Aid Society
By: Nadia Okraku, Twyla Carter & Shervon Small
Attorney for Respondent William L. Jordan & Novell B. Jordan
260 East 161st Street, 8th Floor
Bronx, New York 10451

Bryant F. Tovar, J.

Recitation, as required by C.P.L.R. § 2219(a), of the papers considered in review of this motion.
Papers Numbered
Notice of Motion and Affidavits Annexed
Order to Show Cause and Affidavits Annexed
Answering Affidavits
Replying Affidavits 5
Exhibits 3 
Other 1-2, 4
After oral argument and upon the foregoing cited papers, the decision and order on this motion is as follows:
BACKGROUND & PROCEDURAL POSTURE
The Park Central I LLC and E&M Lafayette APTS LLC, ("Petitioner"), commenced this holdover proceeding against Carolyn Rose ("Respondent"), and William L. Jordan and Novell B. Jordan (collectively, "Respondents"), seeking possession of a rent-stabilized unit at 825 Morrison Avenue, Apt 14H, Bronx, New York, 10473 ("the subject premises"). Prior to the commencement of this proceeding the petitioner caused a 90-Day Notice (predicate notice), Non-Renewal of Rent-Stabilized Lease/Intention to Commence a Summary Proceeding Based Upon Non-Primary Residence, dated December 27, 2018, to be served upon the respondents. The predicate notice alleged that Carolyn Rose's lease for the subject premises expired on March 31, 2019, and pursuant to sections 2524.4(c) and 2524.2(c)2 of the Rent Stabilization Code of 1987, the petitioner would not renew the lease, as Carolyn Rose did not occupy the subject premises as her primary residence, the notice alleges Carolyn Rose failed to occupy the subject premises for at least 50 months prior to the date of the predicate notice. William L. Jordan has never appeared in this proceeding.
The proceeding was first heard on April 17, 2019. The respondent Novell B. Jordan (Respondent B. Jordan) interposed the defense that he was entitled to succeed to the tenancy rights of Carolyn Rose. On April 11, 2023, Hon. Omer Shahid granted the petitioner a final judgment of possession against Carolyn Rose on the grounds that the record established that Carolyn Rose did not reside at the subject premises. The determination did not disturb the rights and defenses of William L. Jordan and respondent B. Jordan. (NYSCEF Doc #26).
The proceeding was then scheduled for trial, which commenced on October 18, 2023. On January 23, 2024, the parties stipulated to the following facts:
"(a)The petitioner has established prima facie to the extent of proving ownership of the subject unit, rent stabilization, and a possessory judgment against Carolyn Rose, introduced into evidence are lease agreements by petitioner and Carolyn Rose for the following time periods[FN1]; (b) Novell Jordan is the biological son of Carolyn Rose; (c) Carolyn Rose was the prime tenant; (d) Novell Jordan has lived in the premises since birth (with the exception of the time he went to college, which was outside any relevant period); (e) He co-resided with Carolyn Rose through 2012 when she left to go to Virginia; (f) Rent was paid in the name of Carolyn Rose through the commencement of this proceeding; (g) Respondent . . . it is his burden to establish succession in accordance with the law and will submit a memorandum of law arguing why under the facts, Novell Jordan is entitled to succession."
THE LAW AND ITS APPLICATION
Rent Stabilization Code ("RSC") § 2523.5(b)(1) provides automatic succession rights to:
"....any member of such tenant's family, as defined in section 2520.6(o) of this Title, who [*2]has resided with the tenant in the housing accommodation as a primary residence for a period of no less than two years . . . immediately prior to the permanent vacating of the housing accommodation by the tenant, or from the inception of the tenancy or commencement of the relationship of for less than such periods, shall be entitled to be name as tenant of the renewal lease..."
RSC § 2520.6(o)(1) defines a family member as, "a husband, wife, son, daughter, stepson, stepdaughter, father, mother, stepfather, stepmother, brother, sister, grandfather, grandmother, grandson, granddaughter, father-in-law, mother-in-law, son-in-law or daughter-in-law of the tenant or permanent tenant."
Given the stipulated facts, the sole issue before this court is whether respondent B. Jordan is entitled to succession where Carolyn Rose, who vacated in 2012, continued to sign leases and pay rent through the commencement of this proceeding.
RENT STABILIZATION CODE 9 NYCRR 2523.5(b)(2)
RSC § 2523.5(b) (2), which became effective November 8, 2023, provides that a tenant will be considered to have permanently vacated the subject housing accommodation when the tenant has permanently ceased residing in the housing accommodation. The continued payment of rent by the tenant or the signing of renewal leases will not preclude a claim by a family member as defined in RSC § 2520.6(o). Respondent B. Jordan argues under the amended language, he is undisputably entitled to succession.
The amendment states "For the purpose of this paragraph permanently vacated shall mean the date when the tenant of record permanently stops residing in the housing accommodation regardless of subsequent contacts with the unit or the signing of lease renewals or continuation of rent payments."
Pursuant to the amended language, respondent B. Jordan avers this court's analysis of the two-year element of succession should commence from the date of Carolyn Rose's actual departure (2012) rather than the date of the expiration of the last renewal lease (2019).
PETITIONER'S ARGUMENT
The petitioner avers that Carolyn Rose and respondent B. Jordan participated in a course of conduct that was intended to deceive the petitioner and its predecessor into believing that Carolyn Rose was still in occupancy of the subject premises. The petitioner argues the amended language does not exculpate respondent B. Jordan from the consequences of this behavior and as such he is not entitled to succession as a right.
The petitioner notes succession rights are not automatic. The petitioner argues that in the succession process, it is up to the tenant and the potential successor to assert the succession claim at the time the renewal lease is offered. In support, the petitioner cites the language in South Pierre Assoc. v. Mankowitz, 17 Misc 3rd 53, 55 (App Term, 1st Dep't, 2007) where the court wrote:
"To ensure the fair and orderly resolution of succession disputes, the governing Code provision (see 9 NYCRR 2523.5 [b] [1] ) contemplates the timely interposition of succession claims via a procedure described in the case law as follows: "in the ordinary course of events, a family member, who remains in the apartment following the departure of the named tenant, will receive a renewal notice towards the end of the lease term, [*3]directed to the named tenant; the recipient will thereupon inform the landlord of the tenant's departure as well as his status as a family member; and, assuming there is no dispute regarding his status, the surviving family member will receive a renewal lease designating him tenant of record"
The amendment does not address this portion of the statue, consequently the petitioner argues, the tenant is still required to set forth some indication that there was a permanent vacatur, and the potential successor must assert a succession claim. The petitioner contends, under the amended language a succession claim ripens at the time the lease renewal is being offered. At this time the tenant must affirmatively indicate that there has been a permanent vacatur and the occupant can then assert a succession claim. Petitioner states that it is under these limited circumstances that a succession claim maybe asserted without giving consideration to who executed the previous leases and who paid the rent. The petitioner distinguishes these facts from the matter at bar, where the petitioner commenced a non-primary proceeding and subsequently discovered the tenant of record was not occupying the subject premises as a primary residence. The petitioner contends that only through this proceeding did the petitioner discover the misrepresentations of Carolyn Rose and respondent B. Jordan. The petitioner notes the facts in this proceeding are akin to those in Extell 609 W. 137th St., LLC v Santana, 24 Misc 3d 141(A) [App Term 2009]. In Extell, the tenant of record maintained significant contacts (paid rent, and signed a renewal lease) with the subject premises for at least three years after moving out. Three years after moving out the tenant of record wrote a letter to the petitioner asking that the respondent (her daughter) be added to the lease. The court held since the tenant of record had not permanently vacated or otherwise surrendered until three years after moving out, the respondent and the tenant of record could not establish contemporaneous residency for the two-year period prior to that date.
THE DIVISION OF HOUSING AND COMMUNITY RENEWAL, REGULATORY IMPACT STATEMENT
Both parties concede the intent of the amendment may be found in the Division of Housing and Community Renewal, Regulatory Impact Statement, 8.16.22 ("DHCR Impact Statement") which reads:
"Presently, there is a split between two departments, the Appellate Division 1st Department and 2nd Department as to how to measure the two-year period. The First Department has held that if the named leaseholder executes a lease, even if that leaseholder has vacated the apartment, the two years are then measured from the end of that lease. Third Lenox Terrace Assoc. v. Edwards, 91 AD3d 532, 937 N.Y.S.2d 41 (1st Dept. 2012). The Second Department, at DHCR's urging, has taken a more pragmatic approach, reviewing the period of actual physical vacatur of the named lease holder even if it happened before the execution of the lease. Jourdain 11 v. DHCR, AD3d, 70 N.Y.S.3d 239 (2nd Dept. 2018). True fraud and an extended period of misrepresentation will not be rewarded by adopting the Jourdain approach which DHCR will use as an exception to the actual physical vacatur date. However, evicting long term family residents because the named leaseholder may have been in the process of moving out during the renewal period or was simply postponing an anticipated problematic and difficult interaction with their landlord over whether remaining family had the right to [*4]stay is simply too harsh a rule. While executing the lease renewal by the vacating named leaseholder may have been inappropriate, the Court of Appeals has ruled (reversing DHCR) in other contexts that an unrelated program violation (failing to advise DHCR of the family member's occupancy) should not supersede the actual facts that such person was remaining a family member and the purpose of these rules is to assure family cohesion and prevent their displacement. Murphy v. DHCR, 21 NY3d 649, 977 N.Y.S.2d 161 (2013)."
THIRD LENOX
As noted in Third Lenox and its progeny, a would-be successor's misrepresentation of the tenant's actual vacatur date from the housing accommodation constitutes fraud that, over an extended number of years, results in undue prejudice to the landlord in prosecuting an eviction claim (see Jourdain, 159 AD3d at 48, 70 N.Y.S.3d 239 (citing Third Lenox), 23 Misc 3d 126(A), 2009 WL 806812 [App. Term, 1st Dept. 2009], affd, 91 AD3d 532, 937 N.Y.S.2d 41 [1st Dept. 2012] ). Such fraudulent conduct, which rises to the level of a "persistent and systematic pattern of deception" (see e.g. S. Pierre Assoc. v. Mankowitz, 17 Misc 3d 53, 54, 844 N.Y.S.2d 552 [App. Term, 1st Dept. 2007] ), operates as a waiver of any succession claim and, accordingly, bars it as a matter of law (see e.g. Third Lenox, 91 AD3d 532, 937 N.Y.S.2d 41 [1st Dept. 2012]). Third Lenox creates an automatic bar to a succession claim were the tenant of record maintained contact with the subject premises after the tenant's actual vacate date. The DHCR Impact Statement, evinces the legislature's clear shift from the harsh outcomes of Third Lenox and veers closer to the analysis of Jourdain.
JOURDAIN
In contrast to the automatic bar of Third Lennox, Jourdain held that where a family member can show long-term residency at the premises and entitlement to succession at the time the tenant actually vacated, imposing an automatic bar to that family member's succession claim may be inappropriate. Rather, Jourdain ruled that the misrepresentation is but one factor to be considered (159 AD3d at 48, 70 N.Y.S.3d 239).
Jourdain held the barring of a succession claim requires a review of the totality of circumstances, such as the duration of the occupancy at the premises, the likelihood that succession would have been granted had the claim been timely interposed, any "pattern" of fraud evincing an intent to deceive, and the prejudice to the landlord (see Jourdain v. New York State Div. of Hous. and Community Renewal, 159 AD3d 41, 45, 70 N.Y.S.3d 239 [2d Dept. 2018]; see e.g. ELK 300 E 83 LLC v. Dowd, [52 Misc 3d 131(A) ] 2016 NY Slip Op. 50976[U] [2016 WL 3501072] [App. Term, 1st Dept. 2016] [affirming lower court's decision that "totality of the circumstances" of a tenant's vacatur must be taken into account in determining whether the misrepresentation constitutes a per se waiver of a succession claim]; see also Westchester Plaza Holdings, LLC v. Boyd, 60 Misc 3d 1230(A) [2018 WL 4266806] [NY City Ct., Westchester County, 2018] [citing totality of circumstances in holding that succession had been shown under Jourdain ] ).
INTERPRETING THE AMENDMENT
"It is fundamental that a court, in interpreting a statute, should attempt to effectuate the intent of the Legislature" (see Patrolmen's Benevolent Assn. v. City of New York, 41 NY2d 205, [*5]208, 391 N.Y.S.2d 544, 359 N.E.2d 1338; see also, Longines—Wittnauer v. Barnes & Reinecke, 15 NY2d 443, 453, 261 N.Y.S.2d 8, 209 N.E.2d 68). As the clearest indicator of legislative intent is the statutory text, the starting point in any case of interpretation must always be the language itself, giving effect to the plain meaning thereof. As the New York Court of Appeals has stated:
"In construing statutes, it is a well-established rule that resort must be had to the natural signification of the words employed, and if they have a definite meaning, which involves no absurdity or contradiction, there is no room for construction and courts have no right to add to or take away from that meaning"
(see Tompkins v. Hunter, 149 NY 117, 122—123, 43 N.E. 532; see also, Matter of Raritan Dev. Corp. v. Silva, 91 NY2d 98, 667 N.Y.S.2d 327, 689 N.E.2d 1373).
In interpreting the amendment, the court is guided by the principle that "Succession is in the spirit of the statutory scheme, whose goal is to facilitate the availability of affordable housing for low-income residents and to temper the harsh consequences of the death or departure of a tenant for their 'traditional' and **882 'non-traditional' family members" (see Murphy v. New York State Div. of Housing and Community Renewal, 21 NY3d 649, 653, 977 N.Y.S.2d 161, 999 N.E.2d 524 [2013] [discussing succession generally] ).
Neither RSC § 2523.5(b)(2) nor Public Housing Law (L. 2023, Ch 769, Part A amending Pub Housing Law § 14) require a would-be successor to assert their succession claim during the lease renewal period as argued by the petitioner. Nonetheless, the court does not agree with respondent B. Jordan's interpretation that given the stipulated facts, his claim for succession is axiomatic. If the intent of the amendment was to create an automatic right of succession such intent would be explicitly stated. On the contrary, the amended language requires the court to focus its analysis on the acts of the would-be successor and whether the would-be successor participated in fraud and not on the acts of the tenant of record. The legislatures intent is supported by the Division of Housing and Community Renewal, Regulatory Impact Statement, 8.16.22 along with the holdings of Jourdain and its progeny which highlight that true fraud should not be rewarded. 
In order to determine fraud, the court must follow the guidelines of Jourdain and undertake a multi-factored analysis looking at the totality of the circumstances including such factors as the intent to deceive, the prejudice against the landlord, the length of time the misrepresentation took place, and the length of the tenancy. (see Jourdain v. New York State Div. of Hous. and Community Renewal, 159 AD3d 41, 45, 70 N.Y.S.3d 239 [2d Dept. 2018]). "The regulation" on succession claims "should be liberally construed to carry out the reform intended and spread its beneficial effects as widely as possible" (see Jourdain v. New York State Div. of Housing and Community Renewal, 159 AD3d 41, 45, 70 N.Y.S.3d 239 [2d Dept. 2018]). This liberal construction does not allow for one to benefit from fraud. 
Based on the stipulated facts the court is unable to determine whether respondent B. Jordan participated in true fraud and what prejudice the petitioner may have endured as a result of respondent B. Jordan's actions. "It is well established that he who seeks equity must come to the court with clean hands" Hastens v. Thomajan, 99 AD2d 463. 463-64 (2d Dep't 1984). "Where a litigant has himself been guilty of inequitable conduct with reference to the subject matter of the transaction in suit, a court of equity will refuse him affirmative aid." Tepfer v. [*6]Berger, 119 AD2d 668 (2d Dep't 1986).
Accordingly, this proceeding is restored to the court's calendar for a hearing to determine whether respondent B. Jordan actively participated in any misrepresentation to the petitioner, what prejudice the petitioner has endured if any, and other factors to determine whether respondent B. Jordan committed true fraud.
CONCLUSION
Accordingly, this proceeding is restored to the court's calendar on April 4, 2025, at 2:30 p.m. in Part E room 404 in Queens County for hearing on the aforementioned.
This constitutes the Decision and Order of the court.
Date: March 12, 2025
Hon. Bryant F. Tovar
Housing Court Judge

Footnotes

Footnote 1: During testimony on October 18, 2023, the petitioner entered into evidence, leases between the petitioner and Carolyn Rose for 2009, 2011, 2012, and 2016.